Filed 3/13/17; pub. order 4/5/17 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re ISABELLA M., a Person Coming Under the Juvenile Court Law. | B277142 |
| | (Los Angeles County Super. Ct. No. CK97180) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| R.C., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Debra Losnick, Juvenile Court Referee. Affirmed.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Assistant County Counsel, and Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

_____

R.C., the alleged father of Isabella M., was incarcerated from the time of her birth until she was 20 months old. The juvenile court denied R.C.'s petition to adjust his parental status from alleged to presumed father and thereafter terminated his parental rights. R.C. appeals from both orders. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Isabella was born in June 2014 to Bridgett M., whose 16-month-old son, Andrew M., had been detained in July 2013 by the Los Angeles County Department of Children and Family Services (Department) based in part on Bridgett's illicit drug use. In detaining Isabella under Welfare and Institutions Code section 300, subdivision (b)(1),[1] the Department alleged that Bridgett had a history of substance abuse and was a current abuser of methamphetamine, which she had used consistently while pregnant with Isabella,[2] and that Andrew was a current dependent of the juvenile court for similar reasons. The petition did not identify R.C. as an offending parent. At the June 25, 2014 detention hearing the juvenile court found R.C. to be

_____

[1] Statutory references are to this code unless otherwise stated.

[2] Isabella did not test positive for methamphetamine at the time of her birth. However, she tested positive for a sexually transmitted disease and was hypotonic and lethargic. She was later found to be lagging in development and was provided with regional center services.

2

Isabella's alleged father and issued a statewide jail removal order to allow R.C. to attend the jurisdiction hearing scheduled for August 6, 2014. Isabella was placed with Bridgett's mother, with whom Andrew had also been placed.

R.C.'s name was not included on Isabella's birth certificate. Bridgett told a Department social worker she had begun living with R.C. in July 2013, became pregnant in September 2013 and broke up with R.C. in December 2013. She knew R.C. had been arrested in February 2014 and had received a multi-year sentence, but did not know where he had been incarcerated. Bridgett reported that R.C. had other children and had told her he did not want to be involved in Isabella's life.

The Department located R.C. at a Vacaville correctional facility and served him by certified mail with notice of the August 6, 2014 hearing and a copy of the petition. The Department also sent an order for R.C.'s appearance at the hearing to the warden of the correctional facility. R.C. did not appear at the hearing and did not execute and return a waiver for his appearance.[3] The court found notice had been proper, sustained the section 300 petition and declared Isabella a dependent of the court. The court denied reunification services to Bridgett with respect to Isabella (§ 361.5, subd. (b)(13)) and terminated them with respect to Andrew. The court denied reunification services to R.C. as an alleged father under section 361.5, subdivision (a). The section 366.26 selection and implementation hearing was scheduled for December 3, 2014. On

---

[3] In his section 388 petition to change his parentage status R.C. admitted he had received notice of the hearing but claimed he had not been provided with legal counsel as to its import.

August 7, 2014 the court clerk served the parties, including R.C., with a copy of the minute order from the hearing, forms for seeking writ review of the order denying services and an advisement of rights for the scheduled section 366.26 hearing.

In the report prepared for the December 3, 2014 hearing, the Department advised the court Isabella was thriving in her placement with the maternal grandmother, who had agreed to adopt both children. The Department requested the section 366.26 hearing be continued to allow completion of the adoption home study. The Department again served R.C. with notice of the hearing (attaching its report) and his new correctional facility with an order for him to appear at the hearing. R.C. did not appear at the hearing. The court found notice had been proper and continued the hearing to February 4, 2015.

Thereafter, the section 366.26 hearing was continued on multiple occasions[4] due to the Department's need to seek an administrative waiver for approval of the home study.[5] The Department's February 18, 2015 interim review report advised the court of its receipt of a waiver of appearance for the December 3, 2014 hearing, signed by R.C. and a prison official on November 17, 2014. R.C. did not appear or otherwise respond to other Department notices, although the Department received a December 2014 letter from a program director stating R.C. was participating in a prison substance abuse treatment program.

---

[4]    Notice was provided to R.C. for continued hearing dates of February 4, 2015, March 5, 2015, August 5, 2015, February 3, 2016 and March 23, 2016.

[5]    The maternal grandmother's home had been the subject of several referrals to the Department, and some of the adults living in the home had criminal records.

4

On March 10, 2016 the Department finally approved the adoption home study for the maternal grandmother and recommended the court terminate parental rights at the hearing scheduled for March 23, 2016. R.C., who had been released from prison, appeared at the hearing and was appointed counsel. At his request, the court ordered a paternity test and continued the hearing to allow R.C.'s counsel to review the record for any notice issues. The court denied R.C.'s request for visitation, citing Isabella's best interest.

The paternity test confirmed R.C. was Isabella's biological father. At the next scheduled hearing R.C.'s counsel requested a continuance to allow him to file a motion on R.C.'s behalf. R.C. filed a section 388 petition on May 9, 2016, alleging the court had violated his due process rights by adjudicating the section 300 petition in his absence. He acknowledged he had received notice of the jurisdiction and disposition hearings but claimed he had not waived his presence and had not been provided with counsel or brought to court to enable him to establish presumed father status. He attended the first hearing he could after his release from custody and argued Isabella (now almost two years old) deserved to be raised by her nonoffending parent. He asked that the court hold new jurisdiction and disposition hearings and place Isabella in his custody or provide him with reunification services. The court scheduled a hearing on the petition for June 16, 2016.

On June 16, 2016 R.C. appeared and requested a continuance to allow him to hire private counsel. The court granted the request and continued the section 388 and section 366.26 hearings to August 3, 2016. The court informed R.C. that, if he did not appear with new counsel on July 1, 2016,

the case would proceed on August 3, 2016 with appointed counsel.

R.C. did not appear on July 1, 2016 or August 3, 2016. Having been unable to contact his client, his appointed counsel requested a continuance, which was denied for lack of good cause. Following argument the court denied the section 388 petition, finding R.C. had not shown that granting the petition would be in Isabella's best interest. The court also found R.C. had been provided with adequate notice through the course of the dependency proceedings but had failed to contact anyone with the Department. The court then relieved his counsel on the ground R.C. remained an alleged father and proceeded to the section 366.26 hearing. The court terminated parental rights as to Isabella and Andrew and designated the maternal grandmother as the children's prospective adoptive parent.

## DISCUSSION

1. *Governing Law*

   a. *Statutory and due process rights of incarcerated alleged fathers*

The Uniform Parentage Act (UPA) (Fam. Code, § 7600 et seq.), which governs parentage determinations (*Elisa B. v. Superior Court* (2005) 37 Cal.4th 108, 116), identifies "the parent and child relationship" as "the legal relationship existing between a child and the child's natural or adoptive parents." (Fam. Code, § 7601.) In determining whether a person qualifies as a natural parent, the dependency courts recognize and differentiate among three categories of parents: an alleged parent, a biological parent and a presumed parent. (*In re H.R.* (2016) 245 Cal.App.4th 1277, 1283; accord, *In re D.P.* (2015) 240 Cal.App.4th 689, 695.)

6

A presumed parent "ranks highest" of all three categories and enjoys a full panoply of rights attendant to parenthood, including entitlement to appointed counsel, custody (assuming the court has not made a detriment finding) and reunification services. (*In re H.R., supra*, 245 Cal.App.4th at p. 1283; *In re D.P.*, *supra,* 240 Cal.App.4th at p.695; see generally *In re Nicholas H.* (2002) 28 Cal.4th 56, 65 [presumed parent status is intended to preserve the important relationship created between an alleged parent and child when the alleged parent has treated that child as a son or daughter].) A natural mother attains presumed parent status by giving birth to the child. (Fam. Code, § 7610, subd. (a).) A person who may be the biological father of a child but has not achieved presumed parent status is an alleged father. (*In re H.R.*, at p. 1283; *In re J.O.* (2009) 178 Cal.App.4th 139, 146-147.)

An alleged father has a narrow range of rights in dependency proceedings, generally limited under the due process clause to notice of the proceedings so that he may appear and have the opportunity to challenge his parentage status. (*In re D.P., supra*, 240 Cal.App.4th at p. 695; *In re J.H.* (2011) 198 Cal.App.4th 635, 644; *In re O.S.* (2002) 102 Cal.App.4th 1402, 1408.) An alleged parent is not entitled to appointed counsel, custody or reunification services. (*In re H.R.*, *supra*, 245 Cal.App.4th at p. 1283; *In re D.A.* (2012) 204 Cal.App.4th 811, 824.) A biological father who has established paternity but has not achieved presumed parent status is still an alleged father, but with the additional opportunity for reunification services if the court determines such services will benefit the child. (§ 361.5, subd. (a); see *In re P.A.* (2011) 198 Cal.App.4th 974, 980 ["[a]

7

man's status as biological father based on genetic testing does not entitle him to the rights or status of a presumed father"].)

"Due process for an alleged father requires only that the alleged father be given notice and 'an opportunity to appear and assert a position and attempt to change his paternity status. [Citations.]' [Citation.] The statutory procedure that protects these limited due process rights is set forth in section 316.2." (*In re Paul H.* (2003) 111 Cal.App.4th 753, 760.)

Section 316.2, subdivision (a), requires the juvenile court to inquire as to the identity of all "presumed or alleged fathers." Once an alleged father has been identified, section 316.2, subdivision (b), requires the court to provide the alleged father with notice that he is or could be the father of the child and that the child is the subject of juvenile dependency proceedings that could result in the termination of parental rights and adoption of the child. The court[6] is further required to include with the notice Judicial Council form JV–505, entitled "Statement Regarding Parentage." As explained in *In re Marcos G.* (2010) 182 Cal.App.4th 369 (*Marcos G.*), "Form JV–505 contains important information for an alleged father. Among other things, it tells him that as an alleged father he will not receive reunification services and will not 'automatically get the child to

_____

[6] The statutory directive uses the passive voice, but section 316.2 appears to place the burden of ensuring that alleged fathers are served with Judicial Council form JV–505 on the juvenile court. (See, e.g., *In re Kobe A.* (2007) 146 Cal.App.4th 1113, 1122 [clerk of court required by statute and court rule to serve alleged father with JV–505].) Juvenile courts often implement this duty by directing child welfare agencies to provide the required notice.

8

live with you or your relatives.'  He is also told that he can have a trial on the issue of parentage and an attorney may be afforded him if he cannot afford one for himself, and if he wants the court to decide if he is the minor's parent he should fill out form JV-505."  (*Id.* at p. 384; see *In re Jesusa V.* (2004) 32 Cal.4th 588, 601 (*Jesusa V.*) ["due process entitles a biological father [to] a meaningful opportunity to qualify as a presumed father"].)

California Rules of Court, rule 5.635 implements section 316.2.  Rule 5.635(h) requires, if an alleged father appears in a dependency case and requests a finding of paternity through Judicial Council form JV–505, that the court determine: "(1)  Whether that person is the biological parent of the child; and [¶]  (2)  Whether that person is the presumed parent of the child, if that finding is requested."  The court may make the required parentage determination by ordering blood testing and considering testimony, declarations or statements by the mother and alleged father.  (Cal. Rules of Court, rule 5.635(e)(2) & (e)(3); *In re D.P., supra,* 240 Cal.App.4th at p. 696; *In re B.C.* (2012) 205 Cal.App.4th 1306, 1311-1312.)  Thus, section 316.2, subdivision (b), and rule 5.635 provide an alleged father with the notice and procedural means to attempt to change his paternity status.  (*In re O.S., supra*, 102 Cal.App.4th at p. 1408.)

In addition to these provisions, Penal Code section 2625 governs notice of dependency proceedings to incarcerated parents.[7] When a proceeding is brought under section 300 to adjudicate

_____

[7]     Although we have found no published decision holding Penal Code section 2625 requires notice to incarcerated alleged fathers, we assume for the sake of argument it does, as did Division Three of this court in *Marcos G., supra,* 182 Cal.App.4th at page 384.

whether a child of a prisoner is a dependent child of the court or under section 366.26 to terminate the parental rights of a prisoner, the court "shall order notice of any court proceeding regarding the proceeding transmitted to the prisoner." (Pen. Code, § 2625, subd. (b).) Pursuant to subdivision (d), if an incarcerated parent indicates a desire to be present during these proceedings, "the court shall issue an order for the temporary removal of the prisoner from the institution, and for the prisoner's production before the court. . . . [N]o petition to adjudge the child of a prisoner a dependent child of the court pursuant to subdivision (a), (b), (c), (d), (e), (f), (i), or (j) of Section 300 of the Welfare and Institutions Code may be adjudicated without the physical presence of the prisoner or the prisoner's attorney, unless the court has before it a knowing waiver of the right of physical presence signed by the prisoner or an affidavit signed by the warden, superintendent, or other person in charge of the institution, or his or her designated representative stating that the prisoner has, by express statement or action, indicated an intent not to appear at the proceeding."

Subdivision (e) of Penal Code section 2625 provides that "[i]n any other action or proceeding in which a prisoner's parental . . . rights are subject to adjudication, an order for the prisoner's temporary removal from the institution and for the prisoner's production before the court may be made by the superior court. . . . A copy of the order shall be transmitted to the warden, superintendent, or other person in charge of the institution not less than 15 days before the order is to be executed." "Thus, only in proceedings to adjudicate a child of a prisoner a dependent of the juvenile court or to terminate parental rights must a court order production of a prisoner for the hearing. For all other proceedings, the trial court has discretion whether to order

10

removal from the institution of a prisoner-parent." (*Marcos G., supra,* 182 Cal.App.4th at p. 386, citing *Jesusa V., supra,* 32 Cal.4th at p. 599.)

> b. *Relief under section 388*

When an alleged father claims a lack of notice of the proceedings caused him to fail to achieve presumed father status prior to expiration of the reunification period, "[h]is only remedy . . . [is] to file a motion to modify [prior orders] under section 388."[8] (*In re Zacharia D.* (1993) 6 Cal.4th 435, 453 (*Zacharia D.*); accord, *In re Justice P.* (2004) 123 Cal.App.4th 181, 189 [§ 388 motion "proper vehicle to raise a due process challenge based on lack of notice"]; *Marcos G., supra,* 182 Cal.App.4th at p. 380, fn. 8 ["a challenge to a dependency judgment on lack of due process/notice grounds is properly made by means of a section 388 petition"].)

Generally, section 388 provides for modification of juvenile court orders when the moving party presents new evidence or a change of circumstance and demonstrates modification of the previous order is in the child's best interest. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415; *In re Stephanie M.* (1994) 7 Cal.4th 295, 317; *In re Y.M.* (2012) 207 Cal.App.4th 892, 919; see Cal. Rules of Court, rule 5.570(e); *Zacharia D., supra,* 6 Cal.4th at p. 455 ["'[s]ection 388 provides the "escape mechanism" that . . . must be built into the process to allow the court to consider new

_____

[8]     Section 388 provides a parent or other interested party "may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of court previously made . . . . [¶] . . . [¶]  If it appears that the best interests of the child . . . may be promoted by the proposed change of order, . . . the court shall order that a hearing be held . . . ."

11

information'"].)  When, as in this case, a section 388 petition is filed after family reunification services have been terminated, the juvenile court's overriding concern is the child's best interest. (*Stephanie M.,* at p. 317.)  The parent's interests in the care, custody and companionship of the child are no longer paramount; and the focus shifts to the needs of the child for permanency and stability.  (*Ibid.*; *In re Vincent M.* (2008) 161 Cal.App.4th 943, 960.)  Because time is of the essence to young children, when it comes to securing a stable, permanent home, prolonged uncertainty is not in their best interest.  (See *In re Josiah Z.* (2005) 36 Cal.4th 664, 674 ["'[t]here is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current "home," under the care of his parents or foster parents, especially when such uncertainty is prolonged'"]; *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531 ["our Supreme Court made it very clear in *Jasmon O.*[, *supra,* 8 Cal.4th 398] the disruption of an existing psychological bond between dependent children and their *caretakers* is an extremely important factor bearing on any section 388 motion"].)[9]

---

[9]      "[B]est interests is a complex idea" that requires consideration of a number of factors.  (*In re Kimberly F., supra,* 56 Cal.App.4th at p. 530; see *In re Jacob P.* (2007) 157 Cal.App.4th 819, 832-833.)  In considering whether a section 388 petitioner has made the requisite showing, the juvenile court may consider the entire factual and procedural history of the case, including factors such as the seriousness of the reason leading to the child's removal, the reason the problem was not resolved, the passage of time since the child's removal, the relative strength of the bonds with the child, the nature of the change of circumstance, and the reason the change was not made sooner.  (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 616; *In re*

12

We review the juvenile court's order for abuse of discretion and may disturb the exercise of that discretion only in the rare case when the court has made an arbitrary, capricious or "patently absurd" determination.  (*In re Stephanie M., supra,* 7 Cal.4th at p. 318.)  We do not inquire whether substantial evidence would have supported a different order, nor do we reweigh the evidence and substitute our judgment for that of the juvenile court.  (*Ibid.*)  We ask only whether the juvenile court abused its discretion with respect to the order it actually made.  (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1351.)

> 2. *Although R.C.'s Right To Proper Notice May Have Been Violated, Any Error Was Harmless*

R.C. does not dispute he received notice of the jurisdiction and disposition hearings held on August 6, 2013.  The notice that appears in the record advised him that he had a right to appear at the hearing and to have an attorney appointed for him if he could not afford one.  A separate notice contained an order authorizing his transport to the hearing.  Nonetheless, R.C. contends the court violated Penal Code section 2625, subdivision (d), by adjudicating Isabella a dependent of the court under section 300 and then denying him reunification services under section 361.5 without an express waiver of attendance signed by him or a prison official.  R.C. misapprehends the scope of this provision.  Penal Code section 2625, subdivision (d)'s directive the hearing not proceed in the absence of the court's receipt of a waiver is expressly premised on the prisoner-parent's request to attend the hearing.  Because R.C. never made such a

_____

*Aaliyah R.* (2006) 136 Cal.App.4th 437, 446-447; *In re Justice P.*, *supra*, 123 Cal.App.4th at pp. 188-189.)

request, there was no violation of Penal Code section 2625, subdivision (d).

However, the notice R.C. received was incomplete because it apparently did not contain Judicial Council form JV–505 informing him of his right to seek presumed father status—a violation of section 316.2.  Absent this notice, R.C. would not know he was entitled to seek a change in his status from alleged to presumed father.  Based on this omission, R.C. argues reversal is required because the juvenile court exceeded its jurisdiction by proceeding in his absence in violation of his right to due process.

That is not the correct test.  Unless the child welfare agency has made no attempt to give the parent notice, errors in notice are subject to harmless error analysis.  (See *Jesusa V.*, *supra*, 32 Cal.4th at pp. 624-625 [rejecting contention defective notice was jurisdictional error; harmless error standard applies to statutory notice violations]; accord, *In re A.D.* (2011) 196 Cal.App.4th 1319, 1325-1327; *Marcos G.*, *supra*, 182 Cal.App.4th at p. 387; *In re J.H.* (2007) 158 Cal.App.4th 174, 183.)  Using the proper standard, we consider whether, had R.C. received the proper notice and asked to change his status from alleged father to presumed father, "it is reasonably probable that a result more favorable [to R.C.] would have been reached." (*People v. Watson* (1956) 46 Cal.2d 818, 836; see *Jesusa V.,* at p. 625.)

R.C. did not make the required showing.  To begin, R.C. received notice of each hearing, as well as copies of the petition and various reports, throughout the dependency proceeding.  Yet he never attempted to contact the court or any of the Department caseworkers.  Further, R.C. was not an offending parent.  His presence at the jurisdiction hearing would not have resulted in a different outcome in the court's decision to assert jurisdiction

14

over Isabella and to make all orders necessary to protect her. (See *In re I.A.* (2011) 201 Cal.App.4th 1484, 1492 [jurisdiction finding involving one parent is good against both; "'"the minor is a dependent if the actions of either parent bring [him or her] within one of the statutory definitions of a dependent"'"].) To be sure, had R.C. appeared at the jurisdiction hearing and requested counsel to assist him in changing his status, the disposition hearing would likely have been continued. Until he achieved a status change, however, as an alleged parent he would have been eligible for reunification services only if the court found such services to be in Isabella's best interest (§ 361.5, subd. (a)), a highly unlikely result given R.C.'s incarceration and lack of involvement in Bridgett's pregnancy and Isabella's life.

Indeed, it is difficult to imagine that R.C. would have been able "to meet the statutory elements to be declared a presumed father under Family Code section 7611" at any point in the dependency proceeding. (*In re Kobe A.* (2007) 146 Cal.App.4th 1113, 1122.) R.C. was not married to Bridgett and did not appear on Isabella's birth certificate. Because Isabella was born after he was incarcerated and he made no effort to assert his paternity or engage his family in Isabella's care and support, he could not have demonstrated he had earned presumed parent status by receiving her into his home and providing for her needs. As Justice Croskey explained in *Marcos G.*, *supra*, 182 Cal.App.4th 369, "Merely being a biological father is not sufficient. If a man has not legally married or attempted to legally marry the mother of his child, he can only be a presumed father if he has received the minor into his home and openly held the child out as his natural child." (*Id.* at p. 383.)

15

Equally problematic for alleged fathers like R.C., the dependency scheme does not wait for them to belatedly assert their intent to form a parental relationship with their children. As the Supreme Court has explained, "[T]he Legislature has statutorily limited reunification services to 'a maximum time period not to exceed 12 months,' which, under certain circumstances, may be extended to 18 months. (§ 361.5, subd. (a).)[10] The 18-month period is not tolled by the parents' physical custody of the child, or by the parents' absence or incarceration. (§ 361.5, subds. (a), (d) & (e)(1).) [¶] What all of these express nontolling events have in common is that they prevent a parent's unilateral action from impeding a child's permanent and timely placement. We conclude that the 18-month period is therefore also not extended . . . by an alleged father's own failure to ascertain the existence of his child, or by his decision to wait until the 18-month hearing to assert his

---

[10] Pursuant to legislation enacted after the Supreme Court's decision in *Zacharia D*., under certain limited circumstances court-ordered services may be extended for an additional six months—that is, for a period not to exceed 24 months from the date the child was originally removed from the physical custody of his or her parent—upon a showing the best interest of the child would be furthered by additional reunification services. (§§ 361.5, subd. (a)(4)(A), 366.22, subd. (b).) This extraordinary extension of services is authorized, among other specific situations, for a parent who has been "recently discharged from incarceration . . . and making significant and consistent progress in establishing a safe home for the child's return . . . ." (§ 366.22, subd. (b).) In this case, more than 24 months had elapsed between Isabella's initial removal from Bridgett in June 2014 and the hearing on R.C.'s section 388 motion in August 2016.

paternity claim." (*Zacharia D., supra,* 6 Cal.4th at p. 452; see *Marcos G., supra,* 182 Cal.App.4th at p. 391 ["Had the trial court . . . not made adjudication and disposition orders and findings at the hearing in March 2007 but instead continued that hearing over and over and over until such time as Father decided to participate in the case and counsel could be appointed for him, the record shows that Marcos would have waited a very, very long time.  The law does not require children to wait so long for parents to become sufficiently interested in dependency proceedings."].)[11]

[11]	The facts in *Zacharia D., supra*, 6 Cal.4th 435 and *Marcos G., supra,* 182 Cal.App.4th 369 are strikingly similar to the facts presented here.  In *Zacharia D.* a biological father had reason to believe at the outset of the dependency case he was the child's father, but waited until the 18-month review hearing before requesting paternity testing. (*Zacharia*, at p. 441.)  The juvenile court terminated the mother's reunification services and set a section 366.26 hearing before ruling on the father's paternity status. (*Ibid.*)  The court later found the father to be the child's biological and presumed father, but declined to extend additional reunification services because "the County had no obligation to offer [the father] reunification services until the court declared him a parent, which had not occurred until [too late] because of [the father]'s 'own doing.'" (*Id.* at pp. 443, 441-442.)  Under those circumstances the Supreme Court was understandably concerned with a biological father "impeding a child's permanent and timely placement" due to the father's "decision to wait until the 18-month hearing to assert his paternity claim." (*Id.* at p. 452.)

In *Marcos G., supra,* 182 Cal.App.4th 369 the father was incarcerated when his biological son was born and through the time dependency proceedings began.  The court found the father to be an alleged father only and did not appoint counsel to represent him. (*Id.* at p. 375.)  The father eventually appeared

17

Like the alleged fathers in *Zacharia D.* and *Marcos G.*, R.C. waited more than 20 months to seek an adjustment of his parental status, well past the 18-month maximum period for reunification efforts.  He appeared at the last moment before his rights were to be terminated, following the approval of the home study for the maternal grandmother.  Isabella's permanent plan was in place and scheduled for approval.  She would turn two before R.C.'s section 388 petition to adjust his status could be heard.  Her best interest lay in remaining in the only home she had ever known with the only parent she had ever known and her half-brother.  (See *In re Justice P. supra,* 123 Cal.App.4th at p. 191 ["If a missing parent later surfaces, it does not automatically follow that the best interests of the child will be promoted by going back to square one and relitigating the case.  Children need stability and permanence in their lives, not protracted legal proceedings that prolong uncertainty for them."].)

In sum, there is no basis to find the juvenile court abused its discretion in denying the petition.

---

16 months later, asserted notice to him had been defective (he had never been served with Judicial Council form JV–505, and the court had proceeded without an express written waiver of his attendance).  He filed a section 388 petition requesting the court hold a new disposition hearing for him and find him to be the child's presumed father.  (*Id.* at p. 380.)  Thereafter, he failed to appear at two section 366.26 hearings.  (*Id.* at p. 389.)  The juvenile court denied the petition and terminated the father's parental rights.  (*Id.* at pp. 381-382.)  The Court of Appeal affirmed, concluding the father had ignored the case and, even had he received required notices and been transported to the jurisdiction hearing, the result would not have differed.

## DISPOSITION

The orders of the juvenile court are affirmed.

PERLUSS, P. J.

We concur:

ZELON, J.

SEGAL, J.

Filed 4/5/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re ISABELLA M., a Person Coming Under the Juvenile Court Law. | B277142 |
| | (Los Angeles County Super. Ct. No. CK97180) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Plaintiff and Respondent, | |
| v. | |
| R.C., | |
| Defendant and Appellant. | |

THE COURT:

The opinion in this case filed March 13, 2017 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), respondent's request pursuant to California Rules of Court, rule 8.1120(a) for publication is granted.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

---

PERLUSS, P. J.          ZELON, J.          SEGAL, J.