Filed 10/26/23  In re M.P. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re M.P. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E081201 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J285460 & J290697) |
| v. | OPINION |
| M.P. et al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  Cara D. Hutson, Judge.  Affirmed.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant, M.P.

Pamela Rae Tripp, under appointment by the Court of Appeal, for Defendant and Appellant, W.O.

1

Tom Bunton, County Counsel, and David Guardado, Deputy County Counsel, for Plaintiff and Respondent.

M.P. (father) and W.O. (mother) are the parents of two children, M.P., Jr. (minor 1, born in 2020) and M.P.W. (minor 2, born in 2021).[1] Father appeals from the juvenile court's order denying father's Welfare and Institutions Code[2] section 388 petition at the section 366.26 hearing. The juvenile court denied father's petition because the court found that father failed to demonstrate he could qualify as a presumed father. Mother joins in father's appeal.[3] For the reasons set forth *post*, we affirm.

FACTUAL AND PROCEDURAL HISTORY[4]

Minor 1 came to the attention of the San Bernardino County Children and Family Services (the department) on June 1, 2020; the department received a referral alleging that mother gave birth to minor 1, and both mother and minor 1 tested positive for methamphetamine.

---

[1] There were two separate proceedings in the juvenile court: minor 1 under case No. J285460, and minor 2 under case No. J290697. The two cases were never consolidated. However, starting on June 23, 2022, the juvenile court held joint hearings on the two cases.

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[3] In her appeal, "Mother joins in Father's opening brief," and does not make any separate arguments on her behalf.

[4] We will provide a shortened statement of facts because the only issue on appeal is whether the juvenile court should have granted father presumed father status.

At this time, father's whereabouts were unknown. The social worker's calls to father's last known number, and a second phone number, were unsuccessful. Moreover, the social worker's visits to father's last known addresses were also unsuccessful. Father had an active warrant for his arrest at this time.

Mother informed the social worker that she was neither married to nor living with father at the time of conception. Father came to the hospital one time for minor 1's birth. Father did not sign any documentation regarding his paternity.

On June 8, 2020, the department filed a section 300 petition to detain minor 1. The petition alleged that father's whereabouts were unknown under section 300, subdivision (g).

At the detention hearing on June 9, 2020, mother told the court that father was the only possible father for minor 1. Mother provided father's phone number to the court. Mother reiterated that she and father were not married, and never lived together. Although father was present at the hospital when minor 1 was born, he did not sign a voluntary declaration of paternity or the birth certificate. At the conclusion of the hearing, the court detained minor 1 from parental custody.

Prior to the combined jurisdiction and disposition hearing on June 29, 2020, the department conducted a search for father to notify him. In the disposition and jurisdiction report, the social worker wrote: "Search efforts revealed six addresses and nine phone numbers. All phone numbers were eliminated. Certified mail notice . . . was sent to six addresses. Notice is complete."

In the jurisdiction and disposition report, the department recommended minor 1 be removed from parental custody, mother be denied reunification services under section 361.5, subdivision (b)(10), and father remain an alleged father entitled to no services.

At the hearing, mother's counsel requested the matter be set for contest. After the court set a hearing date, the court noted "that the DD did not include any phone number for the father, and mother did include a phone number in her paternity inquiry so that needs to be attempted before I can find notice was complete to the father."

On September 17, 2020, the department filed an additional information report to the court. The social worker noted that there was no basis to bypass reunification services for mother, and recommended reunification services be provided to mother.

At the contested hearing on September 22, 2020, the court found allegations true regarding both mother and father. After discussing the department's unsuccessful attempts to contact father with the phone number provided by mother and her counsel, the court found notice to father complete. The court then found father to be an alleged father, not entitled to services. Moreover, the court ordered minor 1 removed from parental custody, with reunification services to be provided to mother.

On September 25, 2020, the department filed an updated declaration of due diligence. In the updated declaration, the social worker wrote: "Declaration of due diligence is amended with phone numbers included. Search efforts revealed six addresses and nine phone numbers. All phone numbers were eliminated. Certified mail notice . . . was sent to six addresses. Notice is complete."

On March 11, 2021, the department filed a status review report. The social worker reported that father had contacted the social worker on February 1, 2021. The social worker wrote: "The father stated he was incarcerated when [minor 1] was removed and all this time the mother has been stating the minor is with her and he cannot see him. However, the father later stated conflicting information stating he had received letters from CFS last year. The father stated he wanted visits with the minor. The father has not communicated again with the undersigned however he was made aware of the next court date."

At the six-month review hearing on March 22, 2021, the court continued mother's reunification services and set a 12-month review hearing.

On July 21, 2021, the department filed a status review report. In the report, the social worker provided that father's whereabouts remained unknown following his initial contact with the department in February.

At the hearing on August 9, 2021, the court continued reunification services for mother and set an 18-month status review hearing.

On September 25, 2021, the department received a referral that alleged mother had given birth to minor 2 at a friend's house. Mother later tested positive for cocaine, amphetamines, and marijuana at the hospital. When the social worker asked for mother's name, she gave the social worker a different name than the name she had given in minor 1's dependency case. Moreover, mother listed minor 2's father as M.R., which are the first and middle name of father. Mother, however, left out father's last name. Minor 2's

5

last name, therefore, differed from minor 1's last name.  In the detention report, the social worker wrote:  "Mother presented as paranoid and did not want the newborn separated from her."  Mother stated that she and father resided together in Las Vegas, but she feared father and had fled from him.

On September 28, 2021, the department filed a section 300 petition on behalf of minor 2.

Neither mother nor father attended the detention hearing for minor 2 on September 29, 2021.  The juvenile court ordered minor 2 detained and set a combined jurisdiction and disposition hearing.  Relying on mother's representations regarding her residency in Las Vegas, Nevada, the court authorized the department to release minor 2 to a child welfare agency in Nevada, if appropriate.

In the jurisdiction and disposition report for minor 2, the social worker recommended that reunification services be provided to mother.  The social worker wrote that father's paternity could not be determined.  Mother later told the social worker that the name of minor 2's father was misspelled; the name should be Marckeal, not Michael.

No parent attended the jurisdiction and disposition hearing for minor 2 on October 27, 2021.  The juvenile court found the allegations in the petition true and ordered removal of minor 2 with reunification services for mother.  Father was found to be minor 2's alleged father; he was not entitled to services.

On December 8, 2021, the juvenile court held an 18-month status review hearing for minor 1; no parties were present.  In a status review report filed on November 29,

2021, the department recommended the termination of mother's services, and to set a section 366.26 hearing to terminate parental rights. The social worker reported that father had "recently" contacted the department to inquire about visitation. Father told the social worker that he was not aware minor 1 was in foster care. In an additional information to the court filed on December 8, 2021, the social worker wrote: "The alleged father, [M.P.] is requesting visits with the minor."

On February 22, 2022, the department filed an additional information to the juvenile court. The department informed the court that mother had two open dependency cases because mother had given the department different names for minor 2's dependency. The social worker wrote: "At this time it appears the mother has not been truthful with the department. The mother intentionally tried to conceal her pregnancy while having an open dependency case for [minor 1] and thwart the investigation regarding [minor 2]."

At minor 1's 18-month review hearing, mother was represented by counsel and appeared via telephone. Neither father nor his counsel attended the hearing. As to father, the juvenile court asked: "Was there a prior detriment finding for Father?" County counsel responded, "I don't believe so. He was an alleged-only Father." As to mother, the juvenile court terminated reunification services and set a section 366.26 hearing.

On April 11, 2022, the department filed an application for order for publication of citation (abandonment re: adoption) in minor 1's case. Attached to the application, the department filed a declaration of due diligence. The declaration summarized the efforts

of the department as follows: "Search efforts produced four addresses, one General Delivery address and eight phone numbers. Certified mail return receipt requested was sent to General Delivery address on 03/08/2022. Tracking Number: . . . . American Eagle eliminated the addresses and was unsuccessful with locating father. **Social Worker II contacted father by telephone. He was telephonically noticed of Hearing date, time, location, and social worker's phone number. The address father provided was determined to be a bad address per American Eagle. Search is complete.** The whereabouts of father . . . remains unknown at this time." (Bold in original.)

On April 13, 2022, the juvenile court permitted the department to publish a citation for father of the section 366.26 hearing on minor 1.

On April 26, 2022, the department filed a status review report on minor 2. The department continued to report father as the alleged father. Moreover, the department lost contact with mother.

At the six-month review hearing for minor 2 on April 27, 2022, mother appeared for the first time in the case. At the hearing, mother told the court that father was minor 2's father. Mother stated she did not know if father lived in Las Vegas; she also did not have his telephone number. Mother also stated that father was not present at minor 2's birth and father was not listed on the birth certificate. Mother then testified that J.S. was another possible father for minor 2. Thereafter, the juvenile court found that the department would have to notice J.S. regarding the proceedings.

8

On May 24, 2022, the department filed a citation for publication to father, under section 294, regarding minor 1.  Two days later, on May 26, 2022, the juvenile court found notice had been given as required by law.

On June 14, 2022, the department filed a section 366.26 report for minor 1.  In the report, a social worker listed a phone number for father but indicated father's address was unknown.  The department recommended terminating parental rights for minor 1.

On June 22, 2022, the Department filed an additional information to the court regarding Minor 1.  The Department reported that father's whereabouts remained unknown and he remained an alleged father.

At a hearing the next day, June 23, 2022, the juvenile court held its first joint hearing for both minors.  The court noted that "[t]his is set as a contested .21(e), as well as a .26."  Minors' counsel stated that he was there "on behalf of both minors.  They are not present."  Mother's counsel was present and indicated that mother was also present.  Neither father nor counsel for father was present.  The court set the contested section 366.26 hearing for minor 1.  Thereafter, the court stated:  "And then I'll note that as to the younger child[,] it's set as contested .21(e) today.  We did get additional information regarding a possible father [J.S.] at the last hearing and there is a DD with no information."  Therefore, the court ordered mother to provide a phone number to the department.  Mother, however, stated she did not have contact information for J.S.

On September 13, 2022, minors' counsel, mother, mother's counsel, and county counsel were present at a hearing for both minors. The court noted that father had yet to appear in the proceedings. The matter was continued.

On October 19, 2022, the department filed an additional information report to the court regarding minor 2. The department informed the court that the social worker contacted father's sister, L.P. (paternal aunt) regarding Native American heritage.

The same day, mother's counsel, minors' counsel, and county counsel were present for a hearing. Neither father nor mother was present. The court noted that the two dependency cases were "on different tracks," because of the deception by mother at the birth of minor 2. However, the court had heard both cases together on multiple occasions, and needed "ICWA to be complete for both children." The court ordered informal notice provisions to be sent to two tribes. Thereafter, the court trailed minor 2's hearing by one day so mother could appear, and continued minor 1's case to December.

The next day, on October 20, 2022, the court held a hearing on minor 2's "contested .21(e)." Mother's counsel, mother, and minor 2's counsel were present. The court terminated reunification services to mother. The court then ordered "that writ rights be sent to the father at the last known address."

On December 1, 2022, the department filed an additional information to the court report on minor 1. At the hearing on December 5, 2022, the court stated that the hearing was "set as a further contested .26 for [minor 1] and a notice review for [minor 2]." The

juvenile court vacated the previously set section 366.26 hearing for minor 1, and set a new date of April 4, 2023, for both minors.

In minor 1's case, a notice of hearing on selection of a permanent plan was personally served on father on December 18, 2022. The proof of service and notice were filed on January 9, 2023. In minor 2's case, the department published notice for father.

An additional information to the court report regarding minor 2 was filed on February 28, 2023. The department informed the court that father's "whereabouts are currently unknown and he remains alleged." In minor 1's case, however, father was personally served. After county counsel stated that "publication was completed," the court went off the record. After going back on the record, the court stated: "And I found the personal notice to Father . . . and that's in [minor 1's] file so he was personally served."

On March 22, 2023, the department filed a section 366.26 report on behalf of minor 2. The department recommended terminating parental rights and adoption as the permanent plan for minor 2.

On April 4, 2023, the department filed an updated section 366.26 report for minor 1. The department reported that father's address was still unknown but listed a telephone number.

On April 4, 2023, the first day of the section 366.26 hearing for both minors, father made his first appearance in the case with counsel. Father stated that he was the father of both minors. Initially, the court and father discussed the possible Native

11

American heritage of minors. Upon father's request, the court continued the hearing to May.

On April 28, 2023, father filed a section 388 petition. Father requested reunification services and visitation with both minors. Mother also filed a section 388 petition on April 26, 2023.

At the continued section 366.26 hearing on May 1, 2023, father, father's counsel, mother, mother's counsel, minors' counsel, and county counsel were present. With regard to father's section 388 petition, county counsel argued: "First, I'd like to note that the father was found to be merely an alleged father, not even a biological father to either child, so we do not believe he has standing other than to file a 388 motion to elevate his status to presumed. [¶] But because we are—have a .26 impending, I would ask the Court consider both 388 motions today and allow us to argue the issue today."

When the court asked father's counsel if he wanted to be heard on the petition, he stated that father "did not become aware of the case until fairly recently—until fairly late and that CFS delays precluded him from having any kind of involvement in the case. [¶] He has taken efforts to engage in case plan services. Subsequently he is asking to elevate his status as a father to get services and have visitation with his children so he can reunify. He believes it would be in the best interest of the minors for him to have as many positive relationships with family members as possible."

Thereafter, mother's counsel made arguments to support mother's section 388 petition.

12

In response to father's argument, counsel for both minors stated:

"I am asking the Court to deny both parents 388 requests.  [¶]  As for Father's we would join in the Department's argument that the father does not have standing to bring a 388 at this time, that the only 388 he can bring would be one to try to raise his standing from an alleged father, which he has not done.  [¶]  And on top of that Father has not shown that there's any changed circumstances.  He's only brought something that indicates that there's some form of parenting that's been done, and he has not shown that he's addressed any type of issues that are before the Court . . . .  [¶]  These hearings have been pushed out several times, especially [minor 1's] hearing which has been pushed out almost to the point of a year.  To delay permanency to the minors at this point would not be in the minors' best interest but would also disservice the minors at this point."  Thereafter, counsel addressed mother's petition.

County counsel joined in minors' counsel's argument.  County counsel reiterated:

"But first with respect to the father, so Father was merely found alleged.  He is not a biological father to the children, that has not been established.  We do not believe the 388 provides any evidence whatsoever to establish his biological paternity to either boy—either child, excuse me, and it also provides no evidence of  best interest.

"As the Court's aware the Court must find by a preponderance of the evidence that not only there are changed circumstances but that it's in the best interest of the children for the Court to grant the 388 at this point in the case.

13

"Father has no evidence whatsoever to show that he would arise to a biological, let alone a presumed father or what we call a Kelsey S. father. He has not had visits with the children. The children—[minor 1] was first brought under the supervision of this Court three-and-a-half years ago. [Minor 2's] entire life has been under Court supervision.

"So we do not believe—first, there is no evidence of changed circumstances but there's certainly no best interest evidence offered on Father's 388."

After hearing argument from counsel, the juvenile court denied both section 388 petitions. The court stated:

"After having read and considered the 388 report submitted by Mom and the 388 report submitted by Dad, the Court finds with respect to both 388 reports neither is in the child's best interest. Dad has not proven at this point to be a presumed father and in both situations, in both 388's submitted, there have not been an adequate finding for this Court to rule that there has been a change in circumstances."

At the conclusion of the section 366.26 hearing, the juvenile court found both minors to be adoptable by clear and convincing evidence, and it would not be detrimental to terminate parental rights. Therefore, the court terminated parental rights to both mother and father and selected adoption as the plan.

On May 1, 2023, mother and father each filed a timely notice of appeal as to both minor 1 and minor 2.

14

**DISCUSSION**

<u>THE JUVENILE COURT PROPERLY DENIED FATHER'S SECTION 388</u>

<u>PETITION BY FINDING THAT FATHER DID NOT QUALIFY AS A</u>

<u>*KELSEY S.* FATHER</u>

On appeal, father contends that he qualified as a *Kelsey S.* (*Adoption of Kelsey S.* (1992) 1 Cal.4th 816 (*Kelsey S.*)) father.  Therefore, the juvenile court erred in denying his section 388 petition.  Mother joins in father's argument but raises no contentions on her behalf.

We first note that in father's section 388 petition, he only requested reunification services and visitation with the minors.  Father did not request a finding to be named as a *Kelsey S.* father of minors.  Therefore, father has waived this argument on appeal.  Notwithstanding father's waiver, we address his argument because, at the hearing on the section 388 petition on May 1, 2023, county counsel asked the court to consider the section 388 petitions and allow the parties to argue the elevation of father's "status to presumed."  The parties then made their arguments and the juvenile court found that, "Dad has not proven at this point to be a presumed father."

"Dependency proceedings differentiate between 'alleged,' 'biological,' and 'presumed' fathers."  (*In re H.R.* (2016) 245 Cal.App.4th 1277, 1283, quoting *In re D.P.* (2015) 240 Cal.App.4th 689, 695.)  "A man who *may* be the father of a child, but has not established his biological paternity, or achieved presumed father status, is an alleged father.  [Citation.]  A biological father has established his paternity, but he has not

15

established that he is the child's presumed father according to Family Code section 7611." (*In re H.R.*, at p. 1283, fn. omitted.)

"A father's rights and the extent to which he may participate in dependency proceedings hinge on his paternal status. [Citation.] 'An alleged father has limited due process and statutory rights.' [Citation.] 'He is not entitled to appointed counsel or to reunification services.' [Citation.]" (*H.R.*, *supra*, 245 Cal.App.4th at p. 1283.) "Presumed father status ranks highest and entitles the father to appointed counsel, custody (assuming the court has not made a detriment finding), and reunification services." (*H.R.*, at p. 1283, citing *D.P.*, *supra*, 240 Cal.App.4th at p. 695 and *In re Kobe A.* (2007) 146 Cal.App.4th 1113, 1120.)

Family Code section 7611 details several rebuttable presumptions under which a man may qualify as a presumed father, most of which involve marrying or attempting to marry the child's mother. However, a man may also establish presumed father status if he receives the child into his home and openly holds the child out as his natural child. (Fam. Code, § 7611, subd. (d).)

In juvenile court, a man who claims entitlement to presumed father status has the burden of establishing, by a preponderance of the evidence, the facts supporting his entitlement. (*In re E.T.* (2013) 217 Cal.App.4th 426, 437.)

On appeal, we apply the substantial evidence test to a finding that a man is a presumed father. However, when a juvenile court has found that a man *is not* a presumed father, we use a stricter test. (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, overruled on

16

another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989.)  In such instances, a reviewing court asks " whether the evidence compels a finding" of presumed father status "as a matter of law." (*In re I.W.*, at p. 1528.)  "Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.'  [Citation.]" (*Ibid*.)  Therefore, to establish that the juvenile court erred in finding father failed to qualify as the minors' presumed father, father must establish that the undisputed facts compelled a finding in his favor as a matter of law.  (*Id.* at pp. 1528-1529.)

In order to determine whether a man has demonstrated a commitment to be found a presumed father, his " 'conduct both *before and after* the child's birth must be considered.  Once the father knows or reasonably should know of the pregnancy, he must promptly attempt to assume his parental responsibilities as fully as the mother will allow and his circumstances permit.  In particular, the father must demonstrate "a willingness himself to assume full custody of the child—not merely to block adoption by others." ' [Citation.]" (*In re Zacharia D.* (1993) 6 Cal.4th 435, 450, fn. 19, quoting *Kelsey S.*, *supra*, 1 Cal.4th at p. 849.)  " 'A court should also consider the father's public acknowledgement of paternity, payment of pregnancy and birth expenses commensurate with his ability to do so, and prompt legal action to seek custody of the child.' [Citation.]" (*Zacharia D.*, at p. 450, fn. 19.)

In father's section 388 petition, he requested that the court change its prior orders because "[t]he minors would have the opportunity to have a positive relationship with their family." Moreover, at the hearing on the petition, his counsel stated that father "believes it would be in the best interest of the minors for him to have as many positive relationships with family members as possible." Father, however, failed to provide any evidence that he promptly assumed parental responsibilities. Father never stated he wanted custody of the minors, only that he wanted the minors to have a relationship with him and their family. Moreover, father presented no evidence that he *publicly* acknowledged his paternity, assisted mother during her pregnancy, actively helped her obtain prenatal care, or helped her pay pregnancy or birth expenses of either minor. Therefore, father could not and did not argue that he should be a presumed father under Family Code section 7611.

Instead, father contends that the juvenile court erred in finding that he did not qualify as a *Kelsey S.* father to the minors. In his brief, father claims that he "qualified as a Kelsey S. father because mother thwarted his involvement in the proceedings and his children's lives."

Under the principles of due process and equal protection, "[a] biological father may be accorded parental rights and become a *Kelsey S.* father when his attempt to achieve presumed parent status under section 7611, subdivision (d) is thwarted by a third party and he made 'a full commitment to his parental responsibilities—emotional,

financial, and otherwise.'  (*Kelsey S.*, *supra*,  1 Cal.4th at p. 849; see *In re Sarah C.* (1992) 8 Cal.App.4th 964, 972.)"  (*In re Elijah V.* (2005) 127 Cal.App.4th 576, 583.)

Hence, under *Kelsey S.*, even if mother's actions may have thwarted father's involvement in this case and minors' lives, father must show that he made "a full commitment to his parental responsibilities—emotional, financial, and otherwise." (*Kelsey S.*, *supra*, 1 Cal.4th at p. 849.)

In this case, it is undisputed that father was aware about the birth of minor 1.  He was at the hospital when minor 1 was born.  Father, however, did not execute a declaration of paternity after the birth.  Moreover, after knowing about minor 1's birth, father made no efforts to assert any rights he may have to minor 1, or to demonstrate any parental responsibilities regarding him.  "[A] *biological*[5] father's 'desire to establish a personal relationship with a child, without more, is not a fundamental liberty interest protected by the due process clause.'  [Citation.]  ' "Parental rights do not spring full-blown from the biological connection between parent and child.  They require relationships more enduring." ' "  (*In re Christopher M.* (2003) 113 Cal.App.4th 155, 160.)

Additionally, while father was incarcerated, he reached out to the social worker—indicating that he was aware about the detention of minor 1.  However, there is nothing in the record to indicate that father requested the social worker to bring minor 1 for visits,

_____

**5**  Although father was only declared as an alleged father, mother has admitted that father is the biological father of minor 1.  As for minor 2, mother claims the biological father is either father or J.S.  However, only father has been involved in the dependency proceeding.

that he wanted to visit minor 1 after he was released from custody, that he wanted to assume his parental responsibilities, or that he wanted to provide financial support for minor 1.  Moreover, father never wrote to the department indicating that he was willing to step up and become involved in minor 1's life, or that father proceeded to take legal action to claim custody of minor 1.

As to minor 2, father's claim fails under *In re Zacharia D.*, *supra*, 6 Cal.4th 435. In *In re Zacharia D.*, the record showed that the father engaged in at least a dozen acts of sexual intercourse with the mother over a two-week period.  The father testified that the possibility of the mother being pregnant with his child did not occur to him.  Moreover, the father knew where the mother was living but did not find her.  Furthermore, the father never requested that the child visit him while he was in jail.  (*Id.* at pp. 442-443, 452.) On those facts, the court concluded that the father was not a *Kelsey S.* father.  (*Zacharia D.*, at p. 452.)  Here, as in *Zacharia D.*, there is nothing in the record to indicate whether father tried to reach out to mother to find out if she got pregnant or had given birth after their sexual encounters.

Moreover, even if father was unaware about the birth of minor 2, had father taken action to become involved in minor 1's life, he would have become aware of minor 2's case when the department uncovered mother's deception in February of 2022.  At that time, father could have taken action to assert his parental rights as to minor 2.  Father had many opportunities to demonstrate his commitment to be found a presumed father,

starting right after minor 1's birth. Father, however, failed to do so. The juvenile court properly found that father was not a *Kelsey S.* father.

To succeed on a section 388 petition, a petitioner must establish "by a preponderance of the evidence that (1) new evidence or changed circumstances exist *and* (2) the proposed change would promote the best interests of the child." (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806, italics added.) "The grant or denial of a section 388 petition is committed to the sound discretion of the trial court and will not be disturbed on appeal unless an abuse of discretion is clearly established." (*In re Shirley K.* (2006) 140 Cal.App.4th 65, 71.)

In this case, the juvenile court did not abuse its discretion in denying father's section 388 petition because there was no new evidence or change in circumstance; the court properly found that father did not rise to the level of a *Kelsey S.* father.[6] There is nothing in the record to indicate that the court's decision was made in an arbitrary, capricious, or patently absurd manner.

---

[6] Father argues that granting of his petition would promote the best interests of the minors. We need not address this contention because father failed to establish new evidence or changed circumstances under section 388.

21

# DISPOSITION

The juvenile court's orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

We concur:

CODRINGTON
J.

MENETREZ
J.

22