Filed 11/30/23  In re Daisy H. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re Daisy H., a Person Coming Under the Juvenile Court Law. | B321581 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>Victor H.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. 19CCJP07594A) |

APPEAL from an order of the Superior Court of Los Angeles County.  Mary E. Kelly, Judge.  Affirmed.

Marsha F. Levine, under appointment by the Court of Appeal, for Defendant and Appellant Victor H.

Jesse McGowan, under appointment by the Court of Appeal, for Respondent Irene I.

Lori Siegel, under appointment by the Court of Appeal, for Respondent Minor Daisy H.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent Los Angeles County Department of Children and Family Services.

_____

## INTRODUCTION

Victor H., the alleged father of minor Daisy H., appeals from the juvenile court's June 14, 2022 order denying his request for presumed father status.[1]  On appeal, Victor argues the juvenile court denied him due process by failing to designate him as the child's presumed father and to appoint counsel for him at or prior to the jurisdictional and dispositional hearing.  Victor asserts these alleged errors were prejudicial because they required him to establish himself as a third presumed parent later in the proceedings, after the juvenile court found another man to be Daisy's presumed father.  We conclude Victor forfeited his right to challenge the juvenile court's earlier paternity rulings because he failed to timely appeal those rulings, and no exception to the forfeiture rule applies.  We further conclude the juvenile court did not err in denying Victor's request to be found a third presumed parent, because he did not have an existing parental relationship with Daisy.  We accordingly affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Dependency petition

Irene I. (Mother) is the mother of Daisy (born July 2015) and Beverly S. (born December 2017).  In the children's

_____

[1]     We refer to the minors and their relatives by their first names to protect the minors' personal privacy.  (See Cal. Rules of Court, rule 8.401(a)(2), (a)(3).)

2

respective birth certificates, Victor is listed as the father of Daisy, and Javier is listed as the father of Beverly.

As of November 2019, when the Los Angeles County Department of Children and Family Services (DCFS) first became involved with the family, Mother and Javier were living together and had been in a relationship for about three years. Both Daisy and Beverly resided with Mother and Javier, and Daisy referred to Javier as her "daddy." Mother reported Victor was incarcerated, but provided no other information as to his whereabouts.

On November 25, 2019, DCFS filed a dependency petition for Daisy and Beverly under Welfare and Institutions Code[2] section 300, subdivisions (a) and (b). As amended, the petition alleged the children were at substantial risk of harm because (1) Mother and Javier engaged in a violent physical altercation with Javier's ex-girlfriend in the children's presence; (2) Mother had a history of substance abuse and was a current abuser of methamphetamines; and (3) Victor had a history of substance abuse and drug-related convictions. In its detention report, DCFS listed Victor's last known address as an address in Huntington Park, California.

## II. Detention hearing

Referee Robin Kesler presided over the November 26, 2019 detention hearing, and Judge Mary Kelly presided over the subsequent hearings. At the detention hearing, Mother submitted a parentage questionnaire for Daisy in which she indicated that Victor was present at the child's birth and signed

---

[2]     Unless otherwise stated, all further undesignated statutory references are to the Welfare and Institutions Code.

the birth certificate naming him as the father, that Victor had openly held himself out as the father, and that Victor had received the child into his home. During the hearing, the court inquired about Daisy's parentage. When asked about the last time she saw Victor, Mother replied, "Maybe like 2016." When asked if Victor provided any financial assistance or child support for Daisy, Mother responded, "That I know of, I don't know." Mother denied that she knew Victor's relatives or had social media contact with them. She also denied that Victor visited Daisy.

The court found Victor to be an alleged father of Daisy, and stated it would make further inquiry once Victor appeared in court and the child's birth certificate was obtained. The court ordered that Daisy remain released to Mother, and that DCFS conduct a due diligence search for Victor. The court found Javier to be the presumed father of Beverly, and ordered that Beverly remain released to Mother and Javier. The court set the adjudication hearing for February 4, 2020.

## III. Jurisdictional and dispositional hearing

On January 23, 2020, DCFS filed its jurisdictional and dispositional report. In its due diligence search, DCFS learned that Victor was in custody at a federal prison in Mendota, California. He was scheduled to be released on August 11, 2020. Victor also had an extensive criminal record, including prior convictions for possession and use of a controlled substance. Mother stated that she ended her relationship with Victor due to his drug use and gang activity. DCFS's report included a notice of hearing and proof of service, which indicated that it sent Victor notice of the February 4, 2020 adjudication hearing via certified mail at his place of incarceration. The notice advised Victor that

4

he had a right to be present at the hearing and to be represented by an attorney.

At the February 4, 2020 adjudication hearing, both Mother and Javier appeared with their respective counsel. The juvenile court began by stating that it had an off-the-record discussion with the parents, "explaining that [Victor] is in a federal correctional facility in Mendota, California. The [dependency] investigator has been trying to reach [Victor] but has not been successful. All parties agree that bifurcating is not practical in this matter even though [Victor] is only named in one count. So we've discussed as a plan to . . . ask the social worker to reach out to [Victor] and determine whether or not [he] would like an attorney." The court ordered DCFS to report back on whether it was able to make contact with Victor and whether he wished to have counsel appointed. The court continued the adjudication hearing.

In a last minute information for the court (LMI) report filed on March 9, 2020, DCFS indicated that it had interviewed Victor by telephone in February 2020 at the federal prison. Victor stated that he had not had any contact with Mother since his detention, and before then, he had only limited contact with Mother and Daisy. He admitted he had a history of substance abuse and drug-related convictions. He also told DCFS that he wanted to have a relationship with Daisy and to have counsel appointed to represent him.

On March 10, 2020, the juvenile court held a progress report hearing. DCFS's counsel informed the court that Victor was in federal custody and wanted the appointment of counsel. The court specially appointed attorney Ken Nielsen as a friend of the court to reach out to Victor. The record does not disclose,

5

however, whether Nielsen made any attempt to do so. Due to the COVID-19 pandemic, the adjudication hearing was again continued.

In May 2020, Mother informed the children's social worker that Victor had called her demanding to see Daisy, and that Mother was disturbed by the call. The social worker then contacted Victor at the telephone number provided by Mother, and tried to advise him that DCFS had to monitor any contact he had with Daisy. Victor interrupted, however, and stated that he knew his rights, he was not the offending parent, and he would not be told when and where to see his daughter. Victor refused the social worker's request that they meet about the case and told her not to call him again. The dependency investigator also reached out to Victor via text message, but he did not reply. On May 19, 2020, the dependency investigator learned Victor had been released to a halfway house in Los Angeles, and left a telephone message for his case manager.

In June 2020, Mother reported to DCFS that Victor continued to harass her and make demands to see Daisy. The dependency investigator again attempted to contact Victor, but he refused to engage in conversation or to meet to discuss the next court hearing and a visitation schedule for Daisy. Instead, Victor became angry and accused the dependency investigator of making false allegations to keep him from his child. The dependency investigator also contacted the halfway house again and received confirmation that Victor continued to reside there. For the next scheduled hearings held on June 30, 2020 and August 19, 2020, DCFS sent Victor notices of the hearings via certified mail at his halfway house address. Victor did not, however, appear for either of those hearings.

6

After several continuances, the adjudication hearing was set for January 11, 2021. While the record does not disclose when Victor left the halfway house, DCFS stated in a LMI report filed on November 19, 2020 that Victor's whereabouts were then unknown. On that date, DCFS sent Victor notice of the January 11, 2021 hearing via certified mail at his former Huntington Park address.

On January 11, 2021, the juvenile court held a combined jurisdictional and dispositional hearing. Victor did not appear and was not represented by counsel at the hearing. The court sustained the counts in the section 300 petition related to substance abuse by Mother and Victor, and dismissed the counts related to domestic violence involving Mother and Javier. The court declared Daisy and Beverly dependents of the court under section 300, subdivision (b), ordered the children released to the home of Mother and Javier under the supervision of DCFS, and granted Mother and Javier family maintenance services. The court bypassed reunification services for Victor, stating that "although [Victor] did surface recently, he has remained whereabouts unknown. So the court has no basis to impose reunification services for him."

The corresponding minute order for the January 11, 2021 hearing showed that the deputy court clerk served both Victor and Mother with a notice of entry of the minute order and appeal rights form via regular mail, although the mailing addresses used were not listed. Victor did not file an appeal from the January 11, 2021 jurisdictional and dispositional orders.

IV.  **Supplemental petition**

On June 9, 2021, DCFS filed a supplemental petition for Daisy and Beverly under section 387 based on Mother's alleged

7

abuse of methamphetamines. In an addendum report filed that same date, DCFS indicated that a federal inmate search revealed that Victor was incarcerated at the Metropolitan Detention Center in Los Angeles, and was scheduled for release on September 3, 2021. Mother told DCFS that she did not know any details about Victor's incarceration. Mother also stated that Daisy had not seen Victor since she was one or two years old, and that Daisy did not have any connection to Victor's family.

On June 11, 2021, Javier filed a Statement Regarding Parentage (JV-505) form for Daisy. According to Javier, Daisy had been living with him since 2016. He told everyone Daisy was his daughter, he was involved in her everyday life, and he provided for all of her needs. Javier also stated that Daisy saw him as her father, and that he was the only father she had ever known.

In a LMI report filed on June 14, 2021, DCFS advised the court that it did not oppose Daisy being released to Javier if he was found to be her presumed father. DCFS noted that Javier had been raising, supporting, and caring for Daisy for the past four years, and that he wanted the child to remain in his custody. Daisy referred to Javier as her father and appeared to feel safe in his care.

On June 14, 2021, the juvenile court held a detention hearing on the section 387 petition. The court began by expressing concern about Victor's paternity status. The court noted that, at the prior detention hearing on the section 300 petition, Referee Kesler found Victor to be an alleged father only, even though Mother's questionnaire indicated that Victor was present at the child's birth, signed the birth certificate, received the child into his home, and supported the child until sometime

8

in 2016. The court also noted that Javier had been in Daisy's life since then, that Javier held himself out as the child's father and provided her with care and support, and that the child believed Javier was her father. The court stated that, if it had made the original paternity finding, it would have found Victor "to be a presumed father as well," but Victor "is not represented by counsel" and "[t]here's been no request to revisit that finding."

The court found Javier to be the presumed father of Daisy. The court detained both Daisy and Beverly from Mother and ordered them released to Javier. The court ordered DCFS to contact Victor at his place of incarceration to advise him of Daisy's detention and to inquire if he wanted an attorney and presumed father status. The court set an adjudication hearing on the section 387 petition for September 14, 2021. DCFS sent Victor notice of the adjudication hearing via certified mail at his place of incarceration. The notice advised Victor that he had a right to be present at the hearing and to be represented by an attorney.

In its jurisdictional and dispositional report filed on August 30, 2021, DCFS stated that the children remained in Javier's care. Although the dependency investigator had made multiple attempts to contact the federal prison, she had not been able to speak to anyone there. Mother reported to DCFS that she had a history of domestic violence with Victor, and that she intended to obtain a restraining order against him once he was released from prison. Mother also stated that Daisy considered Javier to be her father.

The adjudication hearing on the section 387 petition was continued to September 17, 2021. At the hearing, DCFS's counsel noted that Victor had attempted to call in, and asked that

9

he be present before proceeding with disposition. Later in the hearing, the juvenile court stated, "We thought we had [Victor]. I don't know if he's having technical difficulties. That is his number confirmed by [counsel]. However, he was not able to state his name and the court is uncomfortable proceeding in a confidential matter without someone being able to state who they are." The court sustained the section 387 petition, ordered that both Daisy and Beverly remain dependents of the court, and released them to Javier under the supervision of DCFS.

## V. Victor's request for presumed father status

On January 11, 2022, attorney Katherine Mitchell filed a walk-on request on Victor's behalf, seeking the appointment of counsel for Victor and a DNA test for both Daisy and Beverly. The request stated that Victor had been released from incarceration, and that he wished to elevate his paternity status pending the results of the DNA test. The request attached a Statement Regarding Parentage (JV-505) form in which Victor indicated that Daisy lived with him from birth until February 2017, that he told everyone she was his child and was involved in her day-to-day childcare activities, and that he sent money for her a few times a year until October 2021. Mitchell also filed a Notification of Mailing Address (JV-140) form for Victor, which reflected that Victor was residing in Anchorage, Alaska.

On January 21, 2022, the juvenile court appointed counsel for Victor. On February 8, 2022, the court set a contested hearing on Victor's request for presumed father status, and ordered the parties to submit briefing on the matter. On March 18, 2022, the court ordered DCFS to assess Victor for visits with Daisy, and ordered Victor to make himself available for the assessment. Following continuances on April 27, 2022

10

and May 13, 2022, the contested hearing on Victor's request for presumed father status was set for June 14, 2022.

In a LMI report filed on April 26, 2022, DCFS stated that it had been unsuccessful in assessing Victor for visitation due to his lack of communication. Between February and April 2022, the social worker repeatedly attempted to contact Victor to discuss his availability for visits with Daisy. Victor often did not respond to these attempts to reach him. When he did respond, Victor told the social worker he was busy and would call back later, but he did not do so.

Both Victor's counsel and Daisy's counsel submitted briefs regarding the request for presumed father status. Victor claimed that he qualified as Daisy's presumed father because he signed the birth certificate, received Daisy into his home, and openly held Daisy out as his child. He contended that these facts were known to the court at the initial detention hearing, and that the court erred in failing to designate him as the presumed father at that time. He also argued that, although the court previously found Javier to be Daisy's presumed father, it should find Victor to be a third presumed parent because it would be detrimental to the child not to do so. In opposing the request, Daisy's counsel asserted that Victor waived any argument that the court's prior paternity finding was erroneous by failing to timely appeal that ruling. Daisy's counsel further argued that Victor did not qualify as a third presumed parent because he did not have an existing relationship with Daisy.

On June 14, 2022, the juvenile court held the contested hearing on Victor's request for presumed father status. Victor was represented by counsel at the hearing, but he did not appear. The court denied the request, finding that Victor did not qualify

11

as a third presumed parent of Daisy.  The court explained: "[T]his father did have a relationship at one point, but it's too little too late, and the child has an established relationship with [Javier].  [¶]  [Victor] is the biological father.  I am not going to elevate him to presumed.  I do find that the facts relayed by [Daisy's counsel] are more persuasive.  [Victor] was given the opportunity to assert himself in this case very early on.  [He] did not.  This case has limped along and . . . in the last six months [Victor] has asked to come in and be another father.  [¶]  So I do find that [Victor] is the biological father for the minor, but I do not believe that these facts warrant having a third parent.  Those are reserved for rare circumstances, and . . . I don't believe it's appropriate.  And I don't believe it's in the best interest of the child to have three parents."

On June 16, 2022, Victor filed a notice of appeal.  In his notice, Victor stated that he was appealing the "court's denial of [his] request to be found presumed."  He also checked the box for "Other appealable orders relating to dependency," and specified that the appealed order was the "[d]enial of request for presumed status."  Victor identified the hearing date of the appealed order as January 21, 2022; February 8, 2022; March 18, 2022; April 27, 2022; May 13, 2022; and June 14, 2022.[3]

---

[3]     Victor requests that this court take judicial notice of (1) the juvenile court's postappeal orders terminating jurisdiction over Daisy and granting sole legal and physical custody to Javier with no visitation for Victor, and (2) Victor's notice of appeal from the termination and custody orders.  Victor asserts these records are relevant to showing that he appealed the termination order as a

## DISCUSSION

Although Victor appeals from the juvenile court's June 14, 2022 order denying his request for presumed father status, he argues the errors underlying that order occurred much earlier in the case. Victor contends the juvenile court denied him due process by failing to designate him as Daisy's presumed father and to appoint counsel for him at the November 26, 2019 detention hearing, and then by proceeding with the January 11, 2021 jurisdictional and dispositional hearing in his absence and without representation by counsel. Victor claims these errors caused him undue prejudice at the June 14, 2022 hearing on his request for presumed father status by requiring Victor, rather than Javier, to establish himself as a third presumed parent.

## I. Victor cannot challenge the juvenile court's November 26, 2019 and January 11, 2021 rulings

DCFS and Mother assert that Victor is procedurally barred from challenging the juvenile court's findings and orders at the November 26, 2019 detention hearing and the January 11, 2021 jurisdictional and dispositional hearing because he failed to file a timely appeal from those rulings, and he cannot show a violation of his due process rights that would excuse such failure. We agree that Victor forfeited his right to challenge the juvenile court's earlier paternity rulings, and that no exception to the forfeiture rule applies in this case.

---

means of preserving the issues raised in his current appeal. We grant Victor's unopposed request for judicial notice. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

13

## A. Victor forfeited his claims by failing to timely appeal the January 11, 2021 dispositional order

" ' "[A]n appealable judgment or order is a jurisdictional prerequisite to an appeal." ' " (*In re J.F.* (2019) 39 Cal.App.5th 70, 74.) In dependency proceedings, appeals are governed by section 395, which provides in relevant part that "[a] judgment in a proceeding under [s]ection 300 may be appealed in the same manner as any final judgment, and any subsequent order may be appealed as an order after judgment." (§ 395, subd. (a)(1); see *In re A.A.* (2016) 243 Cal.App.4th 1220, 1234.) The judgment and first appealable order in a dependency case is the dispositional order. (*In re S.B.* (2009) 46 Cal.4th 529, 532; *In re A.O.* (2015) 242 Cal.App.4th 145, 148.) " ' "A consequence of section 395 is that an unappealed disposition or postdisposition order is final and binding and may not be attacked on an appeal from a later appealable order." ' " (*In re S.B.*, at p. 532.)

It is also well-established that " 'the timely filing of an appropriate notice of appeal or its legal equivalent is an absolute prerequisite to the exercise of appellate jurisdiction.' " (*In re J.F.*, *supra*, 39 Cal.App.5th at p. 74.) A notice of appeal must be filed within 60 days after the juvenile court makes the appealable judgment or order. (Cal. Rules of Court, rule 8.406(a)(1).) "An appeal from the most recent order in a dependency matter may not challenge earlier orders for which the time for filing an appeal has passed." (*Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1018.) Accordingly, " '[o]nce the deadline [to appeal] expires, the appellate court has no power to entertain the appeal.' " (*In re A.O.*, *supra*, 242 Cal.App.4th at p. 148.)

A notice of appeal is sufficient if it identifies the particular judgment or order being appealed. (Cal. Rules of Court,

14

rules 8.100(a)(2), 8.405(a)(3).)  The notice must be " 'liberally construed so as to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced.' "  (*In re Joshua S.* (2007) 41 Cal.4th 261, 272.)  Nevertheless, "when a notice of appeal manifests a ' "clear and unmistakable" ' intent to appeal only from one order, we cannot liberally construe the notice to apply to a different, omitted order."  (*In re J.F.*, *supra*, 39 Cal.App.5th at p. 76.)  " 'We have no jurisdiction over an order not mentioned in the notice of appeal.' "  (*Id.* at p. 75.)

Here, Victor seeks to challenge the juvenile court's alleged error at the November 26, 2019 detention hearing in failing to elevate him to presumed father status and to appoint counsel to represent him.  He also seeks to challenge the court's alleged error at the January 11, 2021 jurisdictional and dispositional hearing in asserting jurisdiction over Daisy when Victor was neither present nor represented by counsel at the hearing.  However, Victor did not file an appeal from the January 11, 2021 dispositional order, and the time for doing so has since expired.  The unappealed dispositional order is therefore final and binding, and cannot be attacked in Victor's current appeal.

In addition, Victor's notice of appeal makes no reference to the court's earlier findings and orders at either the November 26, 2019 detention hearing or the January 11, 2021 jurisdictional and dispositional hearing.  Instead, the notice makes clear Victor is appealing from the postdispositional order denying his request for presumed father status.  But Victor did not seek to elevate his paternity status until January 11, 2022, one year after the jurisdictional and dispositional hearing.  Because Victor did not

15

timely appeal from the juvenile court's earlier paternity rulings, he forfeited his right to challenge the rulings in this appeal.

**B.      Victor has not shown the due process exception to the forfeiture rule should apply**

The purpose of the forfeiture rule is "to balance the parents' interest in the care and custody of their children with the children's interest in the expeditious resolution of their custody status." (*In re T.G.* (2015) 242 Cal.App.4th 976, 984.)  However, the forfeiture rule is not absolute, and "must not be applied if 'due process forbids it.' " (*Id.* at p. 985; see *In re Janee J.* (1999) 74 Cal.App.4th 198, 208.)  In most cases, "the forfeiture rule does not infringe upon a parent's due process rights because of the numerous safeguards built into the dependency system." (*In re T.G.*, at p. 985.)  For the due process exception to the forfeiture rule to apply, the parent must show there was a defect in the proceedings that "fundamentally undermined the statutory scheme" so as to prevent the parent "from availing himself or herself of the protections afforded by the scheme as a whole." (*In re Janee J.*, at p. 208.)  Moreover, the defect "must go beyond mere errors that might have been held reversible had they been properly and timely reviewed." (*Id.* at p. 209.)  We generally review de novo whether a parent has shown a due process violation.  (*In re J.F.* (2011) 196 Cal.App.4th 321, 329.)

Victor contends the juvenile court violated his due process rights when it failed to designate him as Daisy's presumed father and to appoint counsel for him prior to adjudicating the section 300 petition.  According to Victor, the court should have, of its own accord, found that he was Daisy's presumed father based on the information provided by Mother at the November 26, 2019 detention hearing.  Victor claims that, if the court had

16

elevated him to presumed father status at the detention hearing, he would have been entitled to the immediate appointment of counsel and to custody and reunification services once he appeared. We conclude Victor's due process claim lacks merit.

Dependency law recognizes three categories of fathers: alleged, biological, and presumed. (*In re H.R.* (2016) 245 Cal.App.4th 1277, 1283; *In re D.P.* (2015) 240 Cal.App.4th 689, 695.) The extent of a father's rights in a dependency proceeding depends on his paternal status. (*In re D.P.*, at p. 695.) "A man who *may* be the father of a child but has not established his biological paternity, or achieved presumed father status, is an alleged father." (*In re H.R.*, at p. 1283.) " 'An alleged father has limited due process and statutory rights.' [Citation.] 'He is not entitled to appointed counsel or to reunification services.' " (*Ibid*.) Rather, " '[d]ue process for an alleged father requires only that he be given notice and an opportunity to appear and assert a position and attempt to change his paternity status.' " (*Ibid*.)

At the detention hearing, or as soon as otherwise practicable, the juvenile court must inquire of the mother and any other appropriate person as to the identity and address of all possible presumed or alleged fathers. (§ 316.2, subd. (a); Cal. Rules of Court, rule 5.635(a).) "Once identified, any alleged father should receive notice by certified mail of the proceedings and the fact that the proceedings could result in the termination of parental rights." (*In re H.R.*, *supra*, 245 Cal.App.4th at p. 1284.) The court is not required, however, to elevate an alleged father to presumed father status absent a request. (*In re O.S.* (2002) 102 Cal.App.4th 1402, 1410.) Instead, once an alleged father "appears at a hearing in dependency matter . . . and requests a judgment of parentage on form JV-505, the court

must determine:  [¶] (1) Whether that person is the biological parent of the child; and [¶] (2) Whether that person is the presumed parent of the child, if that finding is requested."  (Cal. Rules of Court, rule 5.635(h).)  Thus, "[t]o be declared a presumed father under Family Code section 7611, a man must ask the [court] to make such a determination and establish the existence of the foundational facts by a preponderance of the evidence. [Citation.] . . . [T]he court cannot sua sponte make such a declaration . . . ."  (*In re O.S.*, at p. 1410, fn. omitted.)

In this case, Mother submitted a parentage questionnaire for Daisy at the November 26, 2019 detention hearing.  Although Mother's responses in the questionnaire suggested that Victor qualified for presumed father status, her statements to the court during the hearing were more equivocal.  When the court inquired about Victor's paternity status, Mother stated that she last saw Victor in 2016, that he did not visit Daisy, and that she did not know if he provided Daisy with financial assistance or support.  Based on the information provided by Mother, the court stated that it was finding Victor to be an alleged father "at this time," and that it would make further inquiry once Victor appeared in the proceedings and the court received a copy of the child's birth certificate.  Because Victor's whereabouts were unknown as of the detention hearing, the court ordered DCFS to conduct a due diligence search for him.

After learning that Victor was in a federal prison, DCFS provided him with notice of the February 4, 2020 adjudication hearing via certified mail at his place of incarceration.  When Victor was later released from prison to a halfway house in Los Angeles, DCFS provided him with notice of the June 30, 2020 status review hearing and the August 19, 2020 continued

18

adjudication hearing via certified mail at his halfway house address. Each notice advised Victor that he had a right to be present at the hearing and to be represented by an attorney. Victor did not, however, appear for any of those hearings. DCFS also tried to make telephone contact with Victor following his release from prison, but in response, he was openly hostile toward the social worker, refused to meet to discuss the case, and told her not to call him again. The record therefore reflects that, prior to the January 11, 2021 jurisdictional and dispositional hearing, Victor was given notice of the proceedings and an opportunity to appear and attempt to change his paternity status, but he failed to avail himself of that opportunity.

In his appellate brief, Victor asserts the record does not contain proof that he received actual notice of the January 11, 2021 jurisdictional and dispositional hearing or his right to appeal the orders made at that hearing. Victor notes that, at the time of the hearing, DCFS reported that his whereabouts were again unknown, but instead of conducting a new due diligence search, DCFS sent him notice of the hearing at his last known address as of November 2019. Victor also notes that, following the jurisdictional and dispositional hearing, the court clerk served him with a copy of the minute order from the hearing, along with an advisement of his right to appeal, but did not list his address in the certificate of mailing.

To the extent Victor is claiming on appeal that either notice was defective because his whereabouts were then unknown, the proper remedy would have been to file a section 388 petition. "When an alleged father claims that a lack of notice of the proceedings caused him to fail to achieve presumed father status prior to expiration of the reunification period, his remedy is to file

19

a section 388 petition." (*In re Daniel F.* (2021) 64 Cal.App.5th 701, 712; see *In re Justice P.* (2004) 123 Cal.App.4th 181, 189 ["[a] section 388 motion is a proper vehicle to raise a due process challenge based on lack of notice"].)  Victor did not file any such petition.  While Victor did file a request for presumed father status later in the case, he did not contend that he was unable to do so earlier because he lacked notice of the proceedings. Instead, he claimed that "[h]e was unable to appear for most of the proceedings in this case because he was incarcerated and had no counsel, although he was noticed of the court hearings and indicated a desire to have counsel appointed."  On this record, Victor has not shown a due process violation based on lack of notice that excused his failure to file a timely appeal.

We also reject Victor's claim that the forfeiture rule does not apply because the juvenile court denied him due process when it failed to appoint counsel for him prior to adjudicating the section 300 petition.  At the time of the January 11, 2021 jurisdictional and dispositional hearing, Victor was an alleged father only.  An alleged father generally is not entitled to appointed counsel, "except for the purpose of establishing presumed fatherhood." (*In re J.O.* (2009) 178 Cal.App.4th 139, 147.)  Whether a parent has a due process right to counsel in a dependency proceeding is determined on a case-by-case basis, requiring the court to balance the private interests at stake, the government's interest, and the risk that the procedures used will lead to an erroneous decision.  (*In re O.S.*, *supra*, 102 Cal.App.4th at p. 1407, citing *Lassiter v. Department of Social Services* (1981) 452 U.S. 18, 31–34.)  We also consider "whether the presence of counsel would have made a 'determinative difference' in the outcome of the proceeding and if the absence of counsel rendered

20

the proceedings fundamentally unfair." (*In re Claudia S.* (2005) 131 Cal.App.4th 236, 251.)  "[A] court deciding whether due process requires the appointment of counsel need not ignore a parent's plain demonstration that [he or] she is not interested in attending a hearing." (*Lassiter*, at p. 33.)

Based on the totality of the record, we conclude the juvenile court did not violate due process by failing to appoint counsel for Victor earlier in the proceedings.  Victor first communicated that he wanted the appointment of counsel in February 2020 when DCFS interviewed him while he was in federal custody.  While the court ordered an attorney to reach out to Victor as a friend of the court in March 2020, the record is silent on whether counsel complied with the order.  By May 2020, however, Victor had been released from prison and was residing in a halfway house.  DCFS contacted Victor in May and June 2020 to discuss the next court hearing and visitation with Daisy, but Victor refused to cooperate and said he would not be told when and where he could see his child.  Although Victor was given notice of the next two court hearings, he did not attend either hearing or take any action to elevate his paternity status at that time.  Victor also did not visit Daisy following his release from prison, and Mother reported Daisy had not seen Victor since she was one or two years old.  After the January 11, 2021 jurisdictional and dispositional hearing, Victor waited another year before asking the court to appoint counsel for him and find him to be Daisy's presumed father.  In the meantime, Javier requested and was granted presumed father status based on his established parental relationship with Daisy.  Under these circumstances, the court's failure to appoint counsel for Victor earlier in the case did not

21

deny him due process, and thus, does not provide an exception to the forfeiture rule.

Citing *In re Christopher L.* (2022) 12 Cal.5th 1063, Victor argues the forfeiture rule does not apply where a parent raises a due process claim based on the failure to appoint counsel. In *In re Christopher L.*, our Supreme Court considered whether a juvenile court's violation of an incarcerated father's right under Penal Code section 2625 to be present and represented by counsel at the jurisdictional and dispositional hearing was structural error or subject to a harmless error analysis. (*In re Christopher L.*, at p. 1069.) The Supreme Court concluded that the error did not require automatic reversal. (*Ibid.*) In its opinion, the Supreme Court did not consider the timeliness of the father's appeal or whether the forfeiture rule applied. While the Court of Appeal did briefly address the issue of forfeiture in its opinion, it declined to decide whether the father forfeited his due process claims by not timely raising them, and instead concluded that, even if he did, it would exercise its discretion to address the merits of his appeal. (*In re Christopher L.* (2020) 56 Cal.App.5th 1172, 1183, fn. 4.)

We conclude the forfeiture rule applies in this case. The totality of the record demonstrates that Victor was provided with notice and an opportunity to appear in court and assert a position on his paternity status, long before the juvenile court adjudicated the section 300 petition and found Javier to be Daisy's presumed father. Victor has not shown that the court's failure to elevate him to presumed father status or to appoint counsel for him earlier in the proceedings prevented him from meaningfully participating in the case, and availing himself of the protections afforded by the dependency scheme. Because

22

Victor has not shown the type of fundamental error that would support an exception to the forfeiture rule, his challenges to the juvenile court's earlier paternity rulings are not cognizable in this appeal.

## II. The juvenile court did not err in denying Victor's January 11, 2022 request for presumed father status

At the time Victor filed his request for presumed father status on January 11, 2022, the juvenile court had made a prior finding that Javier qualified as Daisy's presumed father. In seeking to elevate his own paternity status, Victor did not contend that Javier failed to satisfy the requirements for presumed fatherhood. Rather, Victor claimed that he also qualified as Daisy's presumed father, and thus, should be designated a third presumed parent. The court denied the request on the grounds that Victor did not have an existing relationship with Daisy sufficient to entitle him to third parent status under Family Code section 7612, subdivision (c). We conclude the juvenile court did not err in denying Victor's request.

Family Code section 7612, subdivision (c) states, in relevant part, that "[i]n an appropriate action, a court may find that more than two persons with a claim to parentage under this division are parents if the court finds that recognizing only two parents would be detrimental to the child." This statutory provision, however, is limited in scope. It " 'allows a court to recognize three parents only in "rare cases" where a child truly has more than two parents.' [Citation.] Specifically, ' "an appropriate action" for application of section 7612, subdivision (c) requires a court to find an *existing*, rather than *potential*, relationship between a putative third parent and the child, such

23

that "recognizing only two parents would be detrimental to the child." ' " (*M.M. v. D.V.* (2021) 66 Cal.App.5th 733, 742.) Absent an existing relationship with the child, a parent cannot be recognized as a third presumed parent. (*In re L.L.* (2017) 13 Cal.App.5th 1302, 1317.) We review a juvenile court's findings under section 7612, subdivision (c), for substantial evidence. (*M.M. v. D.V.*, at p. 744.)

In this case, there was substantial evidence to support the finding that Victor did not qualify as a third presumed parent of Daisy under Family Code section 7612, subdivision (c). DCFS first became involved with the family in November 2019 when Daisy was four years old. Victor was incarcerated at the time, and Daisy did not have any contact with him. According to Mother, Daisy had not seen Victor since the child was one or two years old, and she considered Javier to be her father. In May 2020, following his release from prison, Victor began contacting Mother demanding to see Daisy, but he refused to meet with DCFS to arrange a visitation schedule. In March 2022, while Victor's request for presumed father status was pending, the juvenile court ordered DCFS to assess Victor for visitation. Over the next two months, DCFS repeatedly attempted to contact Victor about visiting Daisy, but he never made himself available for visitation and instead claimed that he was busy.

On this record, the evidence was sufficient to support the finding that Victor did not have an existing parental relationship with Daisy, as required for a third presumed parent under Family Code section 7612, subdivision (c). The juvenile court accordingly did not err in denying Victor's request for presumed father status.

## DISPOSITION

The juvenile court's June 14, 2022 order denying Victor's request for presumed father status is affirmed.

VIRAMONTES, J.

WE CONCUR:

GRIMES, Acting P. J.

WILEY, J.