Filed 8/26/15; pub. order 9/22/15 (see end of opn.)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re D.P., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E062886 |
| Plaintiff and Respondent, | (Super.Ct.No. J249412) |
| v. | OPINION |
| O.F., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. A. Rex Victor, Judge. (Retired judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed.

William D. Caldwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, and Adam E. Ebright, Deputy County Counsel, for Plaintiff and Respondent.

1

# I

## INTRODUCTION

Father appeals an order terminating his parental rights to his son, D.P. (born in 2013) under Welfare and Institutions Code section 366.26.[1] Father contends the juvenile court erred in deeming him an alleged father, without ordering requested paternity testing. Father argues this prevented him from establishing parenthood and from obtaining reunification services and custody of his son.[2] We reject father's contentions and affirm the judgment.[3]

# II

## FACTUAL AND PROCEDURAL BACKGROUND

Father and mother are the parents of D.P. and his older sister, I.F. This appeal only concerns D.P. I.F. was removed from her parents in 2011, when mother and father (parents) were arrested for drug possession and sales. I.F. was declared a dependent of the Los Angeles County Department of Children and Family Services (LA-DCFS). The juvenile court ordered parents to participate in individual counseling, parenting education, alcohol and drug counseling, and alcohol and drug testing. In August 2012,

---

[1] Unless otherwise noted, all statutory references are to the Welfare and Institutions Code.

[2] Mother is not a party to this appeal.

[3] Father has also filed in this case a petition for writ of habeas corpus (case No. E063822) in which he alleges he was denied effective assistance of counsel in the trial court. By separate order, we have denied father's writ petition. We conclude the petition fails to allege a prima facie basis for relief because father has not shown prejudice.

reunification services were terminated because of parents' noncompliance with their case plan. Parents lost custody of I.F., resulting in a permanent plan for I.F. I.F. was placed with her maternal grandmother (grandmother). Mother maintained contact with I.F.

**Detention of D.P.**

Parents came to the attention of the San Bernardino County Department of Children and Family Services (DCFS) in May 2013, when mother gave birth to D.P. D.P. tested positive for methamphetamine at birth. Mother admitted using methamphetamine and acknowledged she had a drug problem. Upon D.P.'s release from the hospital after his birth in May 2013, D.P. was removed from mother because of mother's failed reunification with I.F., substance abuse, and criminal history. D.P. was placed with grandmother on July 9, 2013.

Mother had a 2005 conviction for possession of controlled substances for sale and a 2006 warrant for burglary. She also was arrested in 2007 for credit fraud and false checks. In 2011, mother was convicted of drug possession and placed on summary probation until February 2015. Her probation terms included completion of a drug treatment program, attending Alcoholic Anonymous/Narcotics Anonymous meetings. In May 2012, mother was arrested for possession of controlled substances. Mother had an active warrant for her arrest for noncompliance with her 2011 probation terms. Parents also had a history of domestic violence.

Father had a criminal record and a history of substance abuse and crime. Father was convicted in 2005 of loitering for prostitution, in 2007 for possession of marijuana, and in 2011 for possession of drugs. He was also arrested in 2009 for providing false

3

information to a peace officer. During his arrest for possession of drugs for sale in September 2011, I.F. was visiting him. This resulted in DCFS taking I.F. into protective custody. Father was arrested in July 2012 for illegal reentry into the United States, resulting in his incarceration in federal prison in Victorville, where he remained throughout mother's pregnancy with D.P. and during most of the juvenile dependency proceedings.

When D.P. was detained in May 2013, father's whereabouts were unknown. After the detention hearing, DCFS located father at a local federal prison. The juvenile court appointed counsel to represent father. As an alleged father, father requested a paternity test to determine whether he was D.P.'s biological father. Father stated in his Statement Regarding Parentage (form JV-505) filed June 25, 2013, that he did not know if he was the parent of D.P., and consented and requested blood or DNA testing to determine parentage.

**Jurisdiction/Disposition Hearing**

At the jurisdiction/disposition hearing on July 9, 2013, the juvenile court declared D.P. a dependent of the court, ordered D.P. removed from parents' custody and maintained with grandmother, and ordered reunification services and supervised visitation for mother. Counsel for father informed the court that counsel had not been able to locate father and therefore had not had any contact with him. Father's attorney objected to the juvenile dependency petition allegations against father and to DCPS's recommendation not to offer father reunification services. Father's attorney added that she did not "have anything to elevate his status to presumed" father. The court denied

4

reunification services and visitation for father because the court found he was an alleged father and was incarcerated.

DCFS reported in the six-month status report filed in December 2013, that mother's participation in reunification services was inconsistent and mother had gradually become disengaged. Mother was not taking responsibility for her drug use and denied having a problem. D.P. remained placed with his maternal grandparents (grandparents) and sister, I.F. Mother consistently visited D.P. once a week for one hour, and the supervised visits went well. D.P. was healthy. There were some developmental concerns. D.P. was doing well in his placement. At the six-month review hearing in January 2014, the court ordered reunification services and visitation continued for mother.

DCFS reported in its 12-month status report filed in June 2014, that mother had not demonstrated long-term sobriety or sobriety outside of treatment. In January 2014, mother was arrested for possession of a controlled substance. She did not comply with her probation, resulting in a warrant out for her arrest. Mother entered residential drug treatment in June 2014. D.P. had resided with grandparents almost since birth and recognized grandmother as his primary caregiver. D.P. became upset when separated from grandmother. He did not appear to be bonded to mother. Mother regularly visited D.P. and her visits were appropriate. Father remained incarcerated in federal prison. At the 12-month review hearing in July 2014, the court terminated mother's reunification services and set a section 366.26 hearing.

5

**Section 366.26 Hearing**

DCFS stated in its section 366.26 hearing report, filed in October 2014, that father had been provided with notice of the section 366.26 hearing and provided with a copy of DCFS's hearing report. Grandparents wished to adopt D.P. They are willing to allow parents to visit D.P. At the section 366.26 hearing on December 8, 2014, father's attorney informed the court father was no longer in custody and his whereabouts were unknown. Parents objected to termination of parental rights. The juvenile court terminated parental rights and ordered adoption as D.P.'s permanent plan.

III

PATERNITY TESTING

Father contends the juvenile court abused its discretion in denying his request for a paternity DNA test and deeming him an alleged father throughout the juvenile dependency proceedings. Father argues this deprived him of the ability to establish he was D.P.'s biological father, of being treated as a presumed father, of consideration of father's relatives as possible placements for D.P., and of receiving reunification services and custody of D.P. Father argues he must be given the opportunity to demonstrate his commitment to parenting D.P. and willingness to assume custody of D.P.

A. *Applicable Law*

The Welfare and Institutions Code differentiates between "alleged," "biological"

or "natural," and "presumed" fathers.[4] (*In re Paul H.* (2003) 111 Cal.App.4th 753, 760 (*Paul H.*); *In re B.C.* (2012) 205 Cal.App.4th 1306, 1311, fn. 3 (*B.C.*).) "The extent to which a *father* may participate in dependency proceedings and his rights in those proceedings are dependent on his paternal status. 'A man who may be the father of a child, but whose biological paternity has not been established, or, in the alternative, has not achieved presumed father status, is an "alleged" father. [Citation.]' [Citation.]" (*Paul H.*, at p. 760.) An alleged father has limited due process and statutory rights. "'Alleged fathers have less rights in dependency proceedings than biological and presumed fathers. [Citation.] An alleged father does not have a current interest in a child because his paternity has not yet been established. [Citation.]' [Citation.] As such, an alleged father is not entitled to appointed counsel or reunification services. [Citations.]" (*Ibid.*) "'Presumed father status ranks highest.' [Citation.] '[O]nly a presumed, not a mere biological, father is a "parent" entitled to receive reunification services under section 361.5. [Citation.]' [Citation.] However, a biological father may be offered reunification services if the juvenile court determines such services will benefit the child." (*B.C.*, at p. 1311, fn. 3.)

"Due process for an alleged father requires only that the alleged father be given notice and 'an opportunity to appear and assert a position and attempt to change his paternity status. [Citations.]' [Citation.] The statutory procedure that protects these

---

[4] A fourth category, a "de facto" father, is also recognized in dependency proceedings but is not relevant to these proceedings. (*In re B.C.* (2012) 205 Cal.App.4th 1306, 1311, fn. 3.)

limited due process rights is set forth in section 316.2." (*Paul H., supra,* 111 Cal.App.4th at p. 760.)

Section 316.2, subdivision (a), requires the juvenile court to inquire as to the identity of all presumed or alleged fathers. Once an alleged father has been identified, section 316.2, subdivision (b), requires the juvenile court to provide the alleged father with notice that he is or could be the father of the child and that the child is the subject of juvenile dependency proceedings that could result in the termination of parental rights and adoption of the child. The court is required to include with notice Judicial Council form JV–505, entitled "Statement Regarding Paternity."

California Rules of Court, rule 5.635[5] implements the provisions of section 316.2. Rule 5.635 requires that, if an alleged father appears in a dependency matter and requests a finding of paternity through Judicial Council form JV–505, the court shall determine: "(1) Whether that person is the biological parent of the child; and (2) Whether that person is the presumed parent of the child, if that finding is requested." (Rule 5.635(h).) The court may make such determination either by ordering blood testing or based on testimony, declarations or statements by the mother and alleged father. (Rule 5.635(e)(2) & (3); *B.C., supra,* 205 Cal.App.4th at pp. 1311-1312.)

B. *Discussion*

The juvenile court had a duty to inquire about and attempt to determine the parentage of each child who was the subject of a juvenile dependency petition. (*Paul H.,*

---

[5] Undesignated rule references are to the California Rules of Court.

*supra,* 111 Cal.App.4th at p. 760; rule 5.635.) The juvenile court in the instant case satisfied this duty in part at the May 2013 detention hearing by asking mother who D.P.'s father was and if any father was named on D.P.'s birth certificate. Mother named father as D.P.'s biological father, stated there was no father named on D.P.'s birth certificate, and told the court father was currently in federal prison in Victorville for illegally entering the country. In June 2013, father filed a Statement Regarding Parentage (form JV-505) requesting a paternity test to determine whether he was DP's biological father. In the form request, father stated he did not know if he was the parent of D.P. He also consented to and requested blood or DNA testing to determine parentage.

At the jurisdiction/disposition hearing in July 2013, the juvenile court was provided additional information, from which the court could have reasonably determined father was not D.P.'s biological father. The court admitted into evidence the DCPS reports, including the detention and jurisdiction/disposition reports. The jurisdiction/disposition report stated the DCPS social worker confirmed on May 28, 2013, that father was arrested on July 10, 2012, for reentry into the United States as an illegal immigrant, and remained incarcerated in federal prison in Victorville, with no court disposition. This information in conjunction with evidence of D.P.'s premature birth established father was not D.P.'s biological father.

The hospital discharge summary, dated May 20, 2013, attached to the jurisdiction/disposition report filed May 31, 2013, states D.P. was born prematurely at 28 to 37 weeks. D.P. was thus conceived in late August 2012, after father was incarcerated in July 2012. Taking into account D.P. was conceived after father was arrested and

incarcerated on July 10, 2012, the juvenile court reasonably denied father paternity testing, since father could not have fathered D.P. while father was incarcerated.

There was also no evidence supporting a finding that father was a presumed father. Father was not married to mother; his name was not on D.P.'s birth certificate; father did not execute a declaration of paternity; he was not living with mother when D.P. was conceived or thereafter; he had never lived with D.P.; father was never involved in D.P.'s life; he did not provide financial support for D.P.; and father was incarcerated throughout the juvenile dependency proceedings up until shortly before the section 366.26 hearing. Father likely would be or had already been deported as an illegal immigrant. Under such circumstances, father could not possibly have established he was a presumed father, even if somehow he was D.P.'s biological father. Father's attorney acknowledged at the jurisdiction/disposition hearing that she did not have any evidence to support a finding of presumed father status.

The juvenile court satisfied its duty to inquire about and to attempt to determine the parentage of D.P. The juvenile court was required to determine if father was D.P's biological or presumed father. However, the court was not required to order a paternity or genetic test. Unlike in *B.C., supra,* 205 Cal.App.4th 1306, here there was conclusive evidence, including testimony, declarations, and the parents' statements, establishing that father was neither D.P.'s biological father nor a presumed father.

In *B.C.*, the court held the juvenile court did not satisfy its obligation to determine paternity because the juvenile court conditioned granting the alleged father's request for paternity testing on the father paying for the testing. (*B.C., supra,* 205 Cal.App.4th at p.

1310.) The court in *B.C.* reversed and remanded the case with directions the juvenile court determine whether the father was the child's biological father pursuant to rule 5.635. (*Id.* at p. 1315.) The court in *B.C.* noted that, although the juvenile court should have acted on the father's request to determine biological paternity, genetic testing was not mandatory: "Although on the facts presented genetic testing appears to be the only means by which to determine biological paternity, rule 5.635 allows for other types of evidence. We therefore decline to specify how the juvenile court should determine biological paternity in this case." (*Ibid.*)

In the instant case, the trial court could conclusively determine in the absence of genetic testing that father was not D.P.'s biological father. Therefore, the juvenile court did not abuse its discretion in denying father's request for paternity testing and in finding that father was merely an alleged father, based on the evidence before the juvenile court.

IV

DISPOSITION

The judgment is affirmed.

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

MILLER
J.

11

Filed 9/22/15

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

## ORDER

| | |
|---|---|
| In re D.P., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E062886 |
| Plaintiff and Respondent, | (Super.Ct.No. J249412) |
| v. | The County of San Bernardino |
| O.F., | |
| Defendant and Appellant. | |

A request having been made to this court pursuant to California Rules of Court, rule 8.1120(a), for publication of a nonpublished opinion heretofore filed in the above matter on August 26, 2015, and it appearing that the opinion meets the standards for publication as specified in California Rules of Court, rule 8.1105(c),

IT IS SO ORDERED that said opinion be certified for publication pursuant to California Rules of Court, rule 8.1105(b).

CODRINGTON
J.

RAMIREZ
P. J.

MILLER
J.

1