Filed 10/11/23  R.J. v. Superior Court CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| R.J.,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF ALAMEDA COUNTY,<br><br>        Respondent;<br><br>ALAMEDA COUNTY SOCIAL SERVICES AGENCY et al.,<br><br>        Real Parties in Interest. | A168229<br><br>(Alameda County Super. Ct. Nos. JD02419102, JD02419202, JD02419002) |

R.J., alleged and biological father[1] of now 16-year-old Iz.R. and 10-year-old twins In.R., and Ir.R. (minors), seeks extraordinary relief from the juvenile court's order terminating reunification services for mother and setting the matter for a permanency planning hearing pursuant to Welfare and Institutions Code section 366.26.[2]  Father challenges the termination of reunification services and contends minors should remain in their present placements.  Because father lacks standing to challenge the termination of

---

[1]  Mother is not a party to this petition.

[2]  All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

mother's reunification services and because the court has not yet made a determination on the minors' placement making father's challenge premature, we dismiss his petition.

## BACKGROUND

In December 2021, the Alameda County Social Services Agency (Agency) filed a section 300 petition alleging minors Iz.R., In.R., and Ir.R., came within the jurisdiction of the juvenile court under subdivisions (b) and (g).[3] Specifically, the petition alleged minors "were exposed to unsafe housing conditions that place them at risk of serious health conditions while living with mother"; mother "does not provide the minors with adequate care, support, or supervision"; and alleged father "is incarcerated" and is "unable or unwilling to provide the minors with the adequate care, support, or supervision at this time."

Four months later, the court adjudged minors dependents of the court after an uncontested jurisdictional hearing, and found the minors were persons described by section 300, subdivisions (b) and (g). After a contested disposition hearing, the court ordered the Agency to provide services to mother, but stated it was "not required to provide reunification services" to father as an "alleged father, unless and until he establishes a legal basis for receiving those services." The minors had been placed with two nonrelative

---

[3] The petition also made allegations as to a fourth child, J.R., however, between the time of the disposition hearing and the six-month review hearing, J.R. turned 18 years old. Accordingly, the Agency recommended the court terminate mother's reunification services as to him, and that J.R. remain in his current placement as a nonminor dependent. Although J.R.'s supervised independent living placement had been approved, he had "left his approved placement" and had begun living with his older brother O.R. J.R. is not a party to this petition.

extended family members, and the court found the placement "necessary and appropriate."

In its six-month status review report, the Agency explained both mother and father were now incarcerated.[4] The minors were "doing well and have adjusted nicely to their placement." However, although the twins' (In.R. and Ir.R.) current caregiver cared "for the girls deeply," she was "unable to provide long-term housing to them." Additionally, Iz.R.'s caregiver had previously reported she "could only provide support through the end of July," although Iz.R. continued to remain in her care. Accordingly, the Agency performed an "extensive relative search" and concluded "mother's maternal cousin, . . . located in San Diego County was the only relative willing and able to care for the children." Maternal cousin had begun the resource family approval process. However, only the twins were to be placed with him because his home was not large enough for all three minors.

At the six-month status review hearing, the court continued the minors' out-of-home placement, determined mother had made no progress toward alleviating the causes necessitating the placement, and ordered continued reunification services for mother.

In the 12-month review report, the Agency recommended continuation of services to mother. In.R. and Ir.R. were now placed with maternal cousin, and they felt "safe in their placement" and wanted to "remain in their placement" until reunification with mother, or if reunification was unsuccessful. Iz.R. remained in his original placement and wanted to remain in that placement until mother could "get better" or if reunification was

---

[4] In March 2022, the Agency was "informed that the mother [had] pleaded guilty to felony evasion of the police and would be sentenced to two years." In September, the Agency spoke with mother who was unsure of her release date.

unsuccessful. Maternal cousin reported he "would like to pursue legal guardianship" of the twins if reunification did not occur, and Iz.R.'s caregiver now reported she would be "happy to continue caring for [him] as long as he needs." An adoption assessment was completed and the minors were found to be adoptable. The Agency recommended legal guardianship, if "reunification should fail."[5]

The court determined reasonable services had been provided, mother had made minimal progress, and ordered continued services for mother.

In its 18-month status review report and subsequent addendum report, the Agency recommended the minors remain dependents of the court, that the court terminate services for In.R. and Ir.R. and set a section 366.26 hearing. As to Iz.R., the Agency recommended that he "remain in his placement with the plan of [a]nother [p]lanned [p]ermanent [l]iving [a]rrangement" to be made.

At the 18-month hearing, father remained incarcerated[6] and mother's whereabouts were unknown.[7] Father's counsel submitted on the reports. The court terminated services for mother, and observed it had previously ordered reunification services need not be provided to father "because he's alleged." The court ordered an assessment pursuant to section 366.21,

---

[5] Mother was released from prison in January 2023, had "secured housing," and in March she had entered a substance use disorder treatment program.

[6] Counsel for father stated father was "currently in custody in state prison doing a life sentence."

[7] Although mother had been "actively engaged" in her substance abuse program for two months, she left the program without notice and was arrested. She had been released but was now facing two misdemeanor and four felony charges. She had "not returned to her housing facility."

subdivision (i) or 366.22, subdivision (c) and set the matter for a hearing pursuant to section 366.26.

## DISCUSSION

In his writ petition, father checked a series of boxes requesting this court: (1) "[v]acate the order for hearing under section 366.26"; (2) "[r]emand for hearing"; (3) "[o]rder that reunification services be" "provided" or "continued"; (4) "[o]rder visitation between the child and petitioner"; (5) "[r]eturn or grant custody of the child to petitioner"; (6) "[t]erminate dependency"; and (7) "[i]ssue order for alleged father to appear via Zoom."

To the extent father is challenging the court's termination of mother's reunification services, his challenge fails because he lacks the standing to do so. As respondent asserts, father, as a mere biological father was never entitled to reunification services, and as such, he is "not aggrieved by the court's . . . order terminating reunification services to mother."

"Standing to challenge an adverse ruling is not established merely because a parent takes a position on an issue that affects the minor [citation]; nor can a parent raise the minor's best interest as a basis for standing [citation]. Without a showing that a parent's personal rights are affected by a ruling, the parent does not establish standing." (*In re D.S.* (2007) 156 Cal.App.4th 671, 674; see Code Civ. Proc., § 902 [only an "aggrieved" party may appeal].)

"Although standing to appeal is construed liberally, and doubts are resolved in its favor, only a person aggrieved by a decision may appeal. [Citations.] An aggrieved person, for this purpose, is one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision." (*In re K.C.* (2011) 52 Cal.4th 231, 236; *In re Holly R.* (2009) 172 Cal.App.4th

5

1261, 1265 [standing requires " 'a legally cognizable immediate and substantial interest which is injuriously affected by the court's decision' "].)

To have standing, father must show how the termination of mother's reunification services affected his interests. And, he has not done so.

Father is not entitled to reunification services. He was considered an alleged father until the January 2022 hearing, at which time the juvenile court elevated him to a biological father. Neither an alleged nor biological father is entitled to reunification services.

"The Welfare and Institutions Code differentiates between 'alleged,' 'biological' or 'natural,' and 'presumed' fathers. [Citations.] 'The extent to which a *father* may participate in dependency proceedings and his rights in those proceedings are dependent on his paternal status. "A man who may be the father of a child, but whose biological paternity has not been established, or, in the alternative, has not achieved presumed father status, is an 'alleged' father. [Citation.]" [Citation.]' [Citation.] An alleged father has limited due process and statutory rights. ' "Alleged fathers have less rights in dependency proceedings than biological and presumed fathers. [Citation.] An alleged father does not have a current interest in a child because his paternity has not yet been established. [Citation.]" [Citation.] As such, an alleged father is not entitled to appointed counsel or reunification services. [Citations.]' [Citation.] ' "Presumed father status ranks highest." [Citation.] "[O]nly a presumed, not a mere biological, father is a 'parent' entitled to receive reunification services under section 361.5. [Citation.]" [Citation.] However, a biological father may be offered reunification services if the juvenile court determines such services will benefit the child.' " (*In re D.P.* (2015) 240 Cal.App.4th 689, 695, fn. omitted.)

6

At the disposition hearing, the court ordered that the Agency is "not required to provide reunification services to [father] because he is an alleged and bio father, unless and until he establishes a legal basis for those services and also request[s] them."

Father did not attempt to show he was a presumed father. Nor is there any indication in the record that suggests father made any request for services or to elevate his status to that of presumed father. As a biological father, he did not have a current interest in the issue presented at the time the juvenile court set the matter for a permanency planning hearing, namely, whether mother should receive additional reunification services. Thus, father lacks standing to challenge the termination of mother's family reunification services by extraordinary writ. In short, he lacks standing to assert error on mother's behalf. (See *In re Carissa G.* (1999) 76 Cal.App.4th 731, 734-737.)

To the extent father may now be requesting reunification services for himself or seeking review of the order denying him family reunification services, such a challenge also fails.

Father, who was represented by counsel at the disposition hearing, made no objection to the court's order, nor did he appeal from the disposition order. (*Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1018 [" 'an unappealed disposition or postdisposition order is final and binding and may not be attacked on an appeal from a later appealable order' "]; *In re Janee J.* (1999) 74 Cal.App.4th 198, 206 [same].) Nor has father affirmatively sought or provided any authority in support of receiving reunification services— rather, his memorandum of points and authorities in support of his petition focuses solely on placement. In any case, "if a man fails to achieve presumed father status prior to the expiration of any reunification period in a

dependency case, whether that period be 6, 12, or 18 months as is the case, he is not entitled to such services under section 361.5. . . . [After] the termination of reunification services . . . [h]is only remedy [is] to file a motion to modify under section 388." (*In re Zacharia D.* (1993) 6 Cal.4th 435, 453.) "While a biological father is not entitled to . . . reunification services under section 361.5 if he does not attain presumed father status prior to the termination of any reunification period, he may move under section 388 for a hearing to reconsider the juvenile court's earlier rulings based on new evidence or changed circumstances." (*Id.* at p. 454, fn. omitted.)

Finally, to the extent father challenges the placement of the minors, his challenge is premature. In his memorandum of points and authorities, father cites to section 366.26 and *In re Amelia S.* (1991) 229 Cal.App.3d 1060,[8] to assert disruption of "the minors' present placement would be detrimental to their well-being." He notes both he and mother agree with the present placement, as do the minors. Further, he notes both foster parents have agreed to become legal guardians.

At the close of the status review hearing, the court ordered the minors to remain in their current placements and ordered the Agency to conduct an assessment and make a recommendation to the court. As the Agency has not

---

[8] Father's reliance on *Amelia S.* is misplaced. In that case, the father appealed from orders terminating his parental rights to his 10 minor children, asserting there was no evidence to support the court's finding the children were adoptable and therefore termination of his rights was premature. (*In re Amelia S., supra,* 229 Cal.App.3d at p. 1061.) The Court of Appeal reversed, concluding there was no evidence of the required " 'high probability' " of adoption of the 10 children—who suffered from various developmental, emotional, and physical problems—where the permanency hearing report merely "indicated a few foster parents were *considering* adoption." (*Id.* at pp. 1063, 1065.) Here, the section 366.26 hearing has not yet taken place, and father's parental rights have not been terminated.

yet conducted its assessment or made its recommendation, and the court has not yet determined whether to terminate father's parental rights or ordered a permanent plan for the minors, father's challenge is premature.

## DISPOSITION

The petition is dismissed.  Our decision is final immediately as to this court.  (Cal. Rules of Court, rule 8.452(i), 8.490(b)(2)(A).

_____
Banke, J.

We concur:


_____
Margulies, Acting P.J.


_____
Getty, J.*

**Judge of the Solano County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

A168229, RJ v. Superior Court

10