Filed 7/5/24  In re Isaiah N. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re ISAIAH N., a Person Coming Under the Juvenile Court Law. | B319548 (Los Angeles County Super. Ct. No. 21CCJP04536) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>S.N.,<br><br>        Defendant and Appellant. | |

APPEAL from a judgment and orders of the Superior Court of Los Angeles County, Robin R. Kesler and Diane Reyes, Judges Pro Tempore.  Affirmed.

Benjamin Ekenes, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Melania Vartanian, Deputy County Counsel, for Plaintiff and Respondent.

_____

## I.    INTRODUCTION

S.N. (father) appeals from a judgment and postjudgment orders of the juvenile court regarding Isaiah N. (the child), who was adjudged a dependent of the court pursuant to Welfare and Institutions Code section 300.[1]  Father contends that the court erred when it reversed a prior bench officer's ruling that father was the presumed father and found instead that he was an alleged father.  Father also challenges the court's order denying reunification services as unsupported by the evidence.  Finally, he asserts the court and the Los Angeles County Department of Children and Family Services (Department) failed to comply with their inquiry obligations under the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and related California statutes (§ 224 et seq.).  We affirm the orders.

---

[1]    Further statutory references are to the Welfare and Institutions Code unless otherwise indicated.  Mother, B.L., is not a party to this appeal.

## II.    BACKGROUND[2]

A.    *Dependency Petition and Detention Hearings*

On September 28, 2021, the Department filed a section 300 petition, alleging that mother's substance abuse and father's failure to protect the child placed the child at substantial risk of suffering serious physical harm.

On October 1, 2021, the juvenile court conducted a detention hearing at which mother appeared.  Mother's counsel advised the court that father had not been present at the child's birth and had not signed the birth certificate.  Mother's counsel agreed, however, that father had held himself out as the child's father.  The juvenile court ordered that the child be detained and that the Department conduct a due diligence search for father.

On November 15, 2021, the Department learned father was in custody at Men's Central Jail.

On November 16, 2021, the Department filed an amended petition, adding allegations based on the parents' history of violent altercations, which included an extensive history of domestic violence by father against mother.

On November 23, 2021, the juvenile court, with Judge Pro Tempore Cynthia A. Zuzga presiding, conducted a hearing at which father participated by video.  Father submitted a Statement Regarding Parentage, in which father stated, "I

---

[2]    We grant father's requests to judicially notice several documents from a prior dependency proceeding involving father's other children and a minute order of the section 366.22 review hearing on April 10, 2023.  (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

believe I am the parent of the child and request that the court find that I am the presumed parent of the child." He asserted that he told "[e]veryone" that he was the child's father.

Father's counsel conceded that father was not on the birth certificate and was not married to mother. Counsel added that "given the age of the child and [father's] incarceration, he's been unable to accept the child in his home . . . ." Father's counsel asserted, however, that father held himself out as the child's father and requested the court find him to be the presumed father. The juvenile court found father to be the presumed father.

B.    *Adjudication and Disposition Hearing*

On February 16, 2022, the juvenile court conducted an adjudication and disposition hearing. A different judicial officer, Judge Pro Tempore Robin R. Kesler, presided over this hearing. The Department's counsel requested "that the paternity findings be changed" because father was an alleged, and not a presumed, father.

Father's counsel argued that the Department could not make its request orally and was instead required to file a written motion.

The juvenile court continued the hearing regarding father's paternity and requested that the parties file written briefs addressing whether the court had authority "to go back on that and set that aside." The court opined that "[father] does not qualify as presumed."

As to adjudication, the juvenile court sustained all but one of the counts based on father's conduct. For disposition, the court

4

ordered the child removed from mother and father. The court also denied reunification services for father, pursuant to section 361.5, subdivisions (b)(10) and (11).[3] The court added that father had a long history of spousal abuse, continued to engage in domestic violence, and failed to take any steps necessary to ameliorate his issues. The court found that it was not in the child's best interest to offer father reunification services.

C.    *Proceedings Concerning Father's Paternal Status*

On March 10, 2022, the Department filed a motion to "change presumed father status finding." The Department argued that father "never met the burden of proof to establish presumed father status" (capitalization and emphasis omitted), and "the juvenile court should have never found that [father] qualified as [the child's] presumed father." The Department therefore "respectfully request[ed] that the court reverse the presumed father finding, and find [father] to be an alleged father only."

On March 22, 2022, the juvenile court conducted a hearing on the Department's motion. A third judicial officer, Judge Pro Tempore Diane Reyes, presided over this proceeding. The court noted that it was not the bench officer at the November 23, 2021,

---

[3]    Reunification services need not be provided to a parent if "the court ordered termination of reunification services for any siblings or half siblings of the child because the parent . . . failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from that parent" (§ 361.5, subd. (b)(10)(A)), or "the parental rights of a parent over any sibling or half sibling of the child had been permanently severed . . . ." (§ 361.5, subd. (b)(11)(A).)

5

hearing, and that the minute order from that hearing failed to specify why father was deemed a presumed father. Father's counsel stated: "I am asking the court to then find [father] to be the biological father. [¶] One of the issues at the last court date was whether the court had the authority to vacate that finding. Upon further research I notice that the notice—I don't want to mislead the court and state that the court cannot do that. However, [father] and . . . mother both state that [father] is the biological father of this child."

The Department's counsel argued that father should not be declared the biological father until after he completed a DNA test. Counsel asserted that father himself had indicated he was unsure whether he was the biological father.

The juvenile court ordered father's status changed from presumed to alleged father. The court also ordered the Department to conduct DNA testing on the child and father.

On March 22, 2022, father filed a notice of appeal.

In a last minute information filed with the court on May 6, 2022, the Department indicated that the child's DNA had been tested. Father, however, had failed to appear for his scheduled test or to reschedule it.

On October 16, 2023, the juvenile court terminated parental rights for all parents and found the permanent plan to be adoption. Father did not file an appeal from that order. On June 17, 2024, the adoption became final and the juvenile court terminated jurisdiction.[4]

---

[4]     We grant the Department's requests for judicial notice of a minute order dated October 16, 2023, which terminated parental rights, and a minute order dated June 17, 2024, which reflected that the adoption of the child was finalized.

# III. DISCUSSION

## A. *Paternal Status—Invited Error and Forfeiture*

Father contends on appeal that Judge Pro Tempore Reyes erred when she overruled Judge Pro Tempore Zuzga's prior order deeming father to be the presumed father. The Department responds that father either forfeited the argument by failing to raise it before the juvenile court or invited any error by suggesting that the court had authority to revisit the issue of father's paternity. We agree with the Department.

"'A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court. [Citations.] Forfeiture, also referred to as "waiver," applies in juvenile dependency litigation and is intended to prevent a party from standing by silently until the conclusion of the proceedings.' [Citation.] Thus, a party may not assert theories on appeal which were not raised in the trial court." (*In re N.O.* (2019) 31 Cal.App.5th 899, 935.) "'Under the doctrine of invited error, when a party by its own conduct induces the commission of error, it may not claim on appeal that the judgment should be reversed because of that error.'" (*In re G.P.* (2014) 227 Cal.App.4th 1180, 1193.)

---

The Department moves to dismiss father's appeal as moot on the grounds that the juvenile court has now terminated father's parental rights and father did not appeal from that order. Even if the appeal were otherwise moot, for father's benefit, we will articulate why his appeal is without merit. (See *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) Accordingly, we deny the motion to dismiss.

7

Even assuming the juvenile court erred by reconsidering father's paternal status (but see § 385 ["Any order made by the court in the case of any person subject to its jurisdiction may at any time be changed, modified, or set aside, as the judge deems meet and proper, subject to such procedural requirements as are imposed by this article"]), father's counsel either forfeited the issue or invited the error by conceding before the juvenile court that the court had the authority to reconsider his status. Accordingly, we apply the forfeiture and invited error doctrines here. (See *In re S.B.* (2004) 32 Cal.4th 1287, 1293; *In re J.R.* (2022) 82 Cal.App.5th 569, 587, fn. 23.)

B.    *Reunification Services*

Father next contends that the juvenile court erred by denying him reunification services. A juvenile court's findings to deny reunification services are reviewed for substantial evidence. (*In re Albert T.* (2006) 144 Cal.App.4th 207, 216.) Pursuant to section 361.5, "[r]eunification services must be provided to the mother and statutorily presumed father of children who have been removed from their parents' custody, unless a statutory exception applies." (*In re A.E.* (2019) 38 Cal.App.5th 1124, 1141.) Only presumed fathers, however, are entitled to such services. (*In re Zacharia D.* (1993) 6 Cal.4th 435, 451–452; *In re D.P.* (2015) 240 Cal.App.4th 689, 695.) Accordingly, we reject father's contention that the court erred in denying him reunification services. (See *In re Zamer G.* (2007) 153 Cal.App.4th 1253, 1271 [appellate courts affirm lower court's rulings if correct upon any applicable theory of law].)

C.    *ICWA*

Finally, we address father's challenge to the sufficiency of the Department's ICWA inquiry.  "'[T]o have standing to appeal, a person generally must be both a party of record and sufficiently "aggrieved" by the judgment or order.'  [Citation.]  An alleged father who has not acknowledged or established he is a parent within the meaning of title 25 United States Code section 1903(9) lacks standing to challenge a violation of the ICWA notice provisions.  [Citations.]" (*In re Daniel M.* (2003) 110 Cal.App.4th 703, 709.)  Because father lacks standing to raise a challenge to the Department's compliance with its inquiry duties under ICWA, we do not consider the merits of his argument.

## IV.   DISPOSITION

The orders denying father reunification services and deeming him an alleged father are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

I concur:

MOOR, J.

10

In re Isaiah N.
B319548


BAKER, Acting P. J., Concurring


The opinion for the court reaches the correct result. S.N.'s challenge to the juvenile court's determination that he is an alleged father was waived. (See generally *Lynch v. California Coastal Com.* (2017) 3 Cal.5th 470, 475 [""waiver" means the intentional relinquishment or abandonment of a known right"].) The juvenile court's decision to deny S.N. reunification services is supported by substantial evidence apart from the effect of the court's alleged father determination. There was also no Indian Child Welfare Act error. (*In re A.C.* (2022) 86 Cal.App.5th 130, 132 (dis. opn. of Baker, J.); *In re Ezequiel G.* (2022) 81 Cal.App.5th 984; *In re H.V.* (2022) 75 Cal.App.5th 433, 439 (dis. opn. of Baker, J.).)


BAKER, Acting P. J.