Filed 11/18/24  In re S.V. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re S.V., a Person Coming Under the Juvenile Court Law. | B333745 consolidated with B335714 <br><br> (Los Angeles County Super. Ct. Nos. DK14946 DK14946B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br>      Plaintiff and Respondent, <br><br>      v. <br><br> C.P.-S. et al., <br><br>      Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Craig S. Barnes, Judge. Affirmed.

Leslie A. Barry, under appointment by the Court of Appeal, for Defendant and Appellant C.P.-S.

Caitlin Christian, under appointment by the Court of Appeal for Defendant and Appellant V.V.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Tracey Dodds, Deputy County Counsel, for Plaintiff and Respondent.

---

## INTRODUCTION

In December 2015, S. was detained from her mother, appellant V.V. (Mother), and her presumed father, J.F., following the death of an infant sibling. Parental rights were terminated under Welfare and Institutions Code section 366.26[1] in September 2018.

This is the third appeal in this case. We remanded twice for further proceedings under the Indian Child Welfare Act (25 U.S.C. § 1901, et seq.) (ICWA). In this appeal, C.P.-S., who in 2020 was found to be S.'s biological father, argues the juvenile court erred when it declined to appoint counsel for him following this court's most recent remand.

At two hearings in 2023, C.P.-S. appeared and sought counsel's appointment to specially appear on his behalf and be provided access to the juvenile court file to assess C.P.-S.'s parental rights. The juvenile court denied these requests, because parental rights had been terminated and the court's jurisdiction was limited to considering ICWA compliance. After a

---

[1] All undesignated section references are to the Welfare and Institutions Code.

2

further ICWA inquiry, the juvenile court again found that ICWA did not apply.

C.P.-S. and Mother appeal. Their sole contention is that C.P.-S. was entitled to appointed counsel. We conclude there was no error and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

**A.    Detention to termination of parental rights**

S. was born in February 2014, and came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) in December 2015 after Mother and J.F. were arrested following the death of S.'s five-month-old sister. According to the sustained petition, J.F. "wrapped [the infant] tightly in a blanket, placed the child on the child's stomach, placed a blanket over the child's head, and left the child" home alone with S. and Mother's six-year-old daughter, K. Mother was aware that J.F. had wrapped and covered the baby. An autopsy revealed the baby had fractured ribs and a lacerated liver due to blunt force trauma to the abdomen inflicted by an adult. Her death was ruled a homicide.

Investigations revealed that J.F. also physically abused K. and S. by slapping and choking them, and Mother was aware of the abuse. Mother and J.F. admitted they regularly left the children home alone. K. reported seeing Mother and J.F. engage in violent physical altercations.

 The juvenile court sustained a petition under section 300, subdivisions (a), (b), and (f) relating to the infant's death, the physical abuse and neglect of K. and S., and domestic violence between Mother and J.F. At the disposition hearing on February 2, 2017, the juvenile court bypassed services for Mother and J.F. under section 361.5.

3

In 2018 the children were thriving in the care of their maternal grandparents. An adoption permanency assessment was approved for the grandparents in June 2018. DCFS recommended that parental rights be terminated with adoption as the permanent plan.

At the section 366.26 hearing on September 5, 2018, Mother submitted what she said was a DNA test showing that C.P.-S. was S.'s biological father. The court found the evidence inadmissible, noting that the document identified "mother," "child," and "alleged father," but did not identify them by name. The court noted that J.F. had been deemed the presumed father throughout the case, and although Mother was now claiming C.P.-S. was S.'s biological father, the parties had not been diligent in bringing this information to the court. There was no "evidence that [C.P.-S.] could elevate his status to presumed." The court further explained, "Even if someone else is the biological father for [S.,] at this point, they would just be biological only. . . . I am not aware of anyone that has held himself out as the parent of [S.] and received her into their home. I am not aware of anyone that will be elevated to presumed for her." The juvenile court found the children adoptable and terminated the parental rights of Mother, J.F., "and anyone else that claims to be a parent to this child."

## B.    First appeal and limited remand to address ICWA

Mother appealed the 2018 order. She argued that DCFS failed to sufficiently inquire into J.F.'s claimed Native American ancestry as it related to S.'s status as a potential Indian child.[2] In May 2019, a different panel of this court accepted the parties'

---

[2]    On our own motion, we judicially notice Mother's opening brief in case no. B291379. (Evid. Code, §§ 452, subd. (d), 459.)

4

stipulation to conditionally reverse the judgment with directions to DCFS "to comply with its obligation to fully investigate [S.'s] Indian ancestry . . . . The juvenile court is to re-appoint counsel for the parents on remand to address the ICWA issue."

Upon remand, the juvenile court reappointed counsel for Mother and J.F. "for the limited issue of dealing with the ICWA matter." DCFS inquired into J.F.'s claims of Native American heritage, and there was no indication S. was eligible for tribal membership.

On November 14, 2019, C.P.-S. filed a request to change a court order under section 388, seeking custody of S. because he was related to her by blood, and asserting he had Cherokee heritage. The section 388 request was rejected because parental rights were terminated in September 2018. At a hearing on November 26, 2019, C.P.-S. appeared and told the court that he believed he was S.'s biological father. The court ordered a DNA test. C.P.-S. also told the court that his grandmother was a member of the Chickasaw tribe.

On January 27, 2020, the juvenile court found that C.P.-S. was S.'s biological father. The court noted that although parental rights had been terminated, C.P.-S.'s biological paternity was relevant for an ICWA inquiry. DCFS reported that it received negative responses from Cherokee tribes it had contacted.

On January 31, 2022, the juvenile court found that ICWA did not apply and reinstated the order terminating parental rights.

**C.    Second appeal and limited remand to address ICWA**

Mother appealed again.  She asserted that DCFS failed to sufficiently inquire as to C.P.-S.'s Native American ancestry.[3]  On August 9, 2023, a different panel of this court accepted the parties' stipulation to again conditionally reverse the judgment.  DCFS was ordered to interview C.P.-S. and any relevant relatives, and to otherwise comply with ICWA.  The order also stated, "At a noticed hearing, with counsel for the parents reappointed, the juvenile court is to ensure adequate inquiry and any necessary notice has been made and make ICWA findings as to the child. If the juvenile court finds the ICWA is not applicable, the order terminating parental rights shall be reinstated."

The following day, August 10, 2023, the juvenile court reappointed counsel for mother and J.F. "for the purpose of addressing the ICWA inquiry and investigation."  At a hearing on September 28, 2023, an attorney stated that he was representing C.P.-S., who was also present.  The attorney sought to specially appear for C.P.-S. and requested access to the court file so he could assess C.P.-S.'s rights.  The court denied those requests because reversal was limited to further ICWA inquiry, and the court did not have jurisdiction to consider any issues beyond ICWA.  C.P.-S. told the court that he might have Blackfeet and Choctaw ancestry.  The court ordered DCFS to follow up on these, and any other claims of Native American heritage by C.P.-S. or relevant family members.  When counsel began to argue that C.P.-S. did not have notice of the dependency case and sought visitation with S., the juvenile court stopped him.  The court

_____

[3]    On our own motion, we judicially notice Mother's opening brief in case no. B318455.  (Evid. Code, §§ 452, subd. (d), 459.)

noted that counsel had not been appointed to represent C.P.-S. Instead, the court had appointed counsel for the parents of record as required in the Court of Appeal's order, and due to the limited nature of the remand, "I don't think I have authority to go beyond that."

DCFS reported on its continuing ICWA-related inquiries. At a hearing on November 9, 2023, counsel again tried to specially appear on behalf of C.P.-S. The court stated that it allowed C.P.-S. and the attorney to be present at that day's hearing because they "may have further information on the ICWA issue," but no other issues would be considered. When the court asked C.P.-S. if he had additional information relevant to ICWA, C.P.-S. responded, "I don't want to make any statements on record without an attorney."

On December 6, 2023, C.P.-S. filed a notice of appeal seeking to appeal from the court's orders of September 28 and November 9, 2023 denying his request for legal representation.

On January 10, 2024, the juvenile court held that ICWA did not apply, and reinstated the order terminating parental rights. C.P.-S. was not present at the hearing. On March 7, 2024, Mother and C.P.-S. separately appealed the January 10 order. We consolidated the appeals.

## DISCUSSION

C.P.-S.'s sole contention in these consolidated appeals is that the juvenile court erred in failing to appoint counsel for him in the proceedings following our second remand. He argues that he was entitled to appointment of counsel as a result of this court's order on remand that counsel for S.'s parents be "reappointed." Mother joins in C.P.-S.'s arguments. There was no error.

7

"'The extent to which a father may participate in dependency proceedings and his rights in those proceedings are dependent on his paternal status.'" (*In re D.P.* (2015) 240 Cal.App.4th 689, 695.) "Dependency law recognizes four types of fathers: alleged, de facto, biological, and presumed. [Citation.] Only a presumed father is entitled to appointed counsel" and other services. (*In re D.M.* (2012) 210 Cal.App.4th 541, 544; see also *In re Kobe A.* (2007) 146 Cal.App.4th 1113, 1120 ['"Presumed father status entitles the father to appointed counsel"']; *In re Zacharia D.* (1993) 6 Cal.4th 435, 451 ["only a presumed, not a mere biological, father is a 'parent' entitled to receive reunification services under section 361.5"].) Under Family Code section 7611, a person may be presumed to be the parent of a child if married to the other parent or if "[t]he presumed parent receives the child into their home and openly holds out the child as their natural child." Here, J.F. has been S.'s presumed father for the duration of this case.

C.P.-S., is S.'s biological father, not her presumed father. "A 'biological or natural father is one whose biological paternity has been established, but who has not achieved presumed father status as defined in [Family Code section 7611].'" (*In re Jason J.* (2009) 175 Cal.App.4th 922, 932.) "[I]nterpreting 'parent' to include a strictly biological father would introduce into the dependency context fathers who had never demonstrated any commitment to the child's welfare. [Citation.] Indeed, such an interpretation would arguably grant 'reunification services to a rapist or an anonymous sperm donor.'" (*In re Zacharia D., supra,* 6 Cal.4th at p. 451.) Thus, "a biological father's rights are limited to establishing his right to presumed father status." (*In re A.S.* (2009) 180 Cal.App.4th 351, 362.)

Mother first asserted that C.P.-S. might be S.'s biological father when her parental rights were terminated in 2018. Neither did C.P.-S. appear in the case or claim biological father status before parental rights were terminated. The case had been pending for nearly four years when he filed his application under section 388. The petition seeks custody of S., but fails to allege any facts demonstrating presumed father status. (CT 1227-1229)

The juvenile court was never provided evidence to suggest that C.P.-S. was a presumed father before it terminated all parental rights. That order was not challenged, and it is now final. (See, e.g., *In re Dezi C.* (2024) 16 Cal.5th 1112, 1148 fn. 16 ["Appealing on the basis of ICWA or Cal-ICWA inquiry error . . . does not change the fact that parental rights have been terminated even if Indian ancestry is discovered"].) When this court ordered that counsel for parents be "reappointed" upon remand, the juvenile court correctly interpreted the order to mean that counsel be reappointed for the parents recognized throughout the proceedings, Mother and presumed father J.F.

C.P.-S. asserts that he was entitled to counsel as a biological parent with potential Native American ancestry. But he cites no authority supporting his argument that his potential ancestry warrants appointment of counsel, and we have found none. "ICWA was enacted to protect tribal integrity and sovereignty in its membership determinations." (*In re Dezi C.*, *supra*, 16 Cal.5th at p. 1139.) The statute does not convey a right of counsel to a child's relatives who claim Native American ancestry. Indeed, non-parent relatives may be the primary source of information regarding possible Native American ancestry. (See *ibid.* [the Legislature has recognized that a child's

9

"parents may not be the best source of information about a child's Indian ancestry"].)  No authority suggests that such relatives are entitled to counsel for purposes of completing an ICWA inquiry.

C.P.-S. relies upon *In re Justin S.* (2007) 150 Cal.App.4th 1426, to demonstrate the court's error.  In that case, the mother appealed and the case was remanded for the limited purpose of ICWA compliance.  Upon remand, the mother was neither provided notice of various hearings, nor appointed counsel.  The Court of Appeal held the juvenile court erred, because following a parent's appeal, "the appellant-parent must be given the opportunity to participate in the proceedings on remand" and her "participation would be of limited benefit without the assistance of counsel." (150 Cal.App.4th at p. 1436.) Here, Mother and J.F. were appointed counsel and fully participated in the case on remand. *Justin S.* does not support a conclusion that a biological father who did not participate in the case before termination of parental rights is entitled to counsel upon limited remand for ICWA compliance.

DCFS correctly asserts that C.P.-S.'s argument on appeal fails to accurately convey the context of his requests in the juvenile court.  When C.P.-S. and his counsel attended the hearings in September and November 2023, they attempted to argue for visitation and asked for access to the case file to assess C.P.-S.'s rights as a parent.  The juvenile court was correct when it concluded that our remand was limited to ICWA issues.  (See, e.g., *In re Dezi C.*, *supra*, 16 Cal.5th at p. 1137; *In re Terrance B.* (2006) 144 Cal.App.4th 965, 972.)  Moreover, a juvenile court may not allow access to the case file to non-parties.  (See § 827, subd. (a).)  Thus, to the extent C.P.-S.'s contention extends beyond the ICWA inquiry, the juvenile court correctly denied his requests.

Moreover, C.P.-S. has not demonstrated that any failure to appoint counsel constituted reversible error. The denial of a parent's statutory right to counsel is reviewed under a harmless error standard. (*In re A.J.* (2019) 44 Cal.App.5th 652, 665-666; *In re J.P.* (2017) 15 Cal.App.5th 789, 797.) Thus, "the test for prejudice is generally whether 'it is reasonably probable that a result more favorable to [the appellant] would have been reached in the absence of the error.'" (*In re A.R.* (2021) 11 Cal.5th 234, 252, quoting *People v. Watson* (1956) 46 Cal.2d 818, 836.)

C.P.-S. asserts that because he did not have counsel or access to the case file, he was "unable to raise significant shortcomings with the ICWA notices." He also notes that at the hearing on November 9, 2023, he told the court that he did not want to "make any statements on record without an attorney." But C.P.-S. makes no factual argument that the ICWA inquiry was deficient. Indeed, he expressly states that he is not challenging the adequacy of the ICWA ruling in this appeal. Unless an appellant demonstrates error, we assume the lower court's ruling was correct. (See, e.g., *In re J.F.* (2019) 39 Cal.App.5th 70, 79; *Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) C.P.-S.'s unsupported contention of prejudice is insufficient. Thus, any possible error in failing to appoint counsel for C.P.-S. was harmless.

## DISPOSITION

The juvenile court's orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

11

**SIGGINS, J.

We concur:

CURREY, P.J.                          ZUKIN, J.

---

**      Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.